364 P.2d 661

**UNIVERSITY HEIGHTS, INC., a Utah corporation, Plaintiff,**

v.

**STATE TAX COMMISSION of Utah, Defendant.**

No. 9313.

Supreme Court of Utah.

Sept. 7, 1961.

5. 82 Utah 347, 24 P.2d 1110.

Ronald C. Barker, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., for defendant.

CROCKETT, Justice.

The plaintiff corporation which owns and operates an apartment house in Salt Lake City brought this proceeding to review a decision of the Tax Commission which assessed a corporate franchise tax deficiency against it for the years 1956, 1957, and 1958 in the amount of $619.70 plus interest.

The corporation franchise tax is imposed by Section 59–13–3, Utah Code Annotated 1953, which provides in part:

"Every * * * corporation, * * for the privilege of exercising its corporate franchise or for the privilege of doing business in the state, shall annually pay to the state a tax equal to four per cent of its net income for the preceding taxable year computed and allocated to this state in the manner hereinafter provided, or one-twentieth of one per cent of the *fair value* during the next preceding taxable year of its tangible property in this state, whichever is greater; * * *" (emphasis added)

The plaintiff, reasoning that inasmuch as Sec. 59–5–1, U.C.A.1953, which relates to the valuation by the County Assessor, pro-

vides that "all taxable property must be assessed at forty percent of its reasonable fair cash value,"[1] multiplied the County Assessor's appraisal of its property by two and one-half times and proffered its tax on that basis. The Tax Commission rejected this method of determining value and assessed the deficiency based on the plaintiff's book value of its property.

At the outset we observe that for the purpose here under discussion we see no significant difference between the meaning of the words, "fair value," as used in Sec. 59–13–3, which relates to the franchise tax and the phrase, "reasonable fair cash value," used in Sec. 59–5–1, which relates to the property tax.[2] But a problem does exist as to the method used by the Tax Commission in determining the value of plaintiff's property for the franchise tax.

 At the hearing before the Commission it stipulated that it had "determined the value of [plaintiff's] property by reference to the depreciated book value as shown by the balance sheets on the returns filed by the taxpayer." Due to the fact that there are various accounting methods of depreciating property and carrying it on books, we recognize the merit in plaintiff's contention that there is no reason to assume the value shown on the books represents the actual fair cash value of the property. Accordingly, we are constrained to agree that simply taking the book value, with nothing more being shown, constitutes an arbitrary action in determining value.

The plaintiff's insistence that the Tax Commission is bound by the appraisal placed on its property by the County Assessor as 40% of its value, and that it is therefore entitled to pay its corporate franchise tax on the basis of two and one-half times that figure presents quite another problem. Implementing its position plaintiff points to Sec. 59–5–46(9), U.C.A.1953, which authorizes the Tax Commission to "have and exercise general supervision over the administration of the tax laws of the state, [and] over assessors * * * in the performance of their duties in connection with assessment of property and collection of taxes, to the end that all assessments of property [may] be made relatively just and equal * * * and that the tax burden may be distributed without favor of discrimination"; and further to Sec. 59–5–47 which states that the Tax Commission "shall adjust and equalize the valuation of the taxable property in the several counties of the state for the purpose of taxation"; and also provides that upon

1. Sec. 1, Chap. 142, S.L.U.1961, amends this section by substituting 30% for 40%.
2. Sec. 59–3–1(5), U.C.A.1953 provides: "Value" and "full cash value" mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor.

notice to the property owner and to the County Auditor it may assess or reassess such property. Plaintiff argues that because the Tax Commission is possessed of these powers, it is obliged to either take the measures authorized for readjusting the assessments or be bound to accept the County Assessor's value for the purpose of the franchise tax.

■ In considering this argument it should be kept in mind that there are hundreds of thousands of separately assessed pieces of property in this state. Even though the Tax Commission does have the powers just referred to, the language of those statutes and their practical application lead to the conclusion that the authority of the Commission over local assessments is a general supervisory one to enable it to assist in keeping the values for property tax purposes in counties and localities on a fair and equitable basis in relation to each other, rather than to suppose it was intended that the Commission would maintain active detailed supervision of the appraisals of all of the individual properties in the state. The latter is the function of the County Assessor and undoubtedly it was not intended that the Tax Commission would intervene to take over or interfere with this duty except in unusual circumstances where such disparities

or inequities exist that it would be necessary to do so to bring about relatively just and equal valuation of property for general property tax purposes; or to cooperate in valuations of property as provided in Sec. 59–5–46.1, U.C.A.1953.

It is hardly to be questioned that the statutes just discussed were not intended at the time of enactment to have any application to or effect upon the administration of the corporate franchise tax. The Tax Commission's supervisory power over the administration of tax laws and over assessors[3] existed long before the franchise tax came into being. Their reference to general supervision over the administration of tax laws, tied together with such power "over assessors" obviously applied to the laws then in existence relating to taxes levied upon real property appraised by county assessors.

■ The corporation franchise tax is of comparatively recent origin in our law, having been enacted by Chapter 39, Sec. 4, S.L.U.1931 (now Sec. 59–13–3, U.C.A. 1953). It is an entirely different type of tax than the general property tax. It is imposed by the state upon corporations for the privilege of existing and doing business within the state. It is based primarily upon the corporate income: 4%

3. The general supervisory power has existed since statehood, the present language of Sec. 59–5–46(9), U.C.A.1953 was enacted in Sec. 1, Ch. 114, S.L.U.1919.

of net income, and only in the event the tax so computed is less than ½₀ of 1% of the value of the corporation's property within the state, is the value of its property used. The statute places the duty of collecting the tax upon the State Tax Commission and when it becomes necessary to use such value, the duty of collecting the tax obviously includes the duty and prerogative of determining what the value of the property is. If the Tax Commission so desired, we do not question that it could take the appraisal of the County Assessor as 40% of the value. Moreover, it unquestionably would be practical and salutary to regard that appraisal prima facie as being 40% of the fair value of the property. But we see nothing in the statutes to indicate that the legislature intended this to be mandatory. To do so would not only infringe upon the prerogative and the duty of the Tax Commission of determining such value for the purpose of levying the franchise tax, but might in some instances require the acceptance of a value unrealistic and disproportionate to the true worth of the property. If in the performance of its duty the Tax Commission should determine the "fair value" of the property to be something different from that arrived at by taking two and one-half times the value placed by the County Assessor, the value so determined would be the proper basis of the corporate franchise tax.

The order is vacated and the cause remanded.

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.