2000 UT 49

**UTAH RAILWAY COMPANY, Petitioner,**

v.

**UTAH STATE TAX COMMISSION, Respondent.**

**Utah Association of Counties, Intervenor.**

**No. 970528.**

Supreme Court of Utah.

June 9, 2000.

---

Robert A. Peterson, John H. Bogart, Salt Lake City, for petitioner.

Jan Graham, Att'y Gen., Brian L. Tarbet, Michelle Bush, John C. McCarrey, Asst. Att'ys Gen., Salt Lake City, for respondent.

Bill Thomas Peters, Salt Lake City, for intervenor.

DURRANT, Justice:

¶ 1 Utah Railway Company petitions for review of a decision of the State Tax Commission upholding an appraised valuation of Utah Railway's taxable property. Utah Railway initially challenged the valuation of its property by the Property Tax Division of the Commission, and the Commission granted a formal hearing. Before the Commission, the

Division abandoned its initial valuation and argued for a higher valuation. The Commission rejected both Utah Railway's and the Division's requests for differing valuations and adopted the original appraised value.

## BACKGROUND

¶ 2 Utah Railway was incorporated in 1912. It operates entirely within the state of Utah. Its business is hauling coal from mines in Carbon and Emery counties to terminal facilities in Provo, Utah. Utah Railway's assets primarily consist of leased locomotives, portions of wholly owned track, terminal facilities that are owned jointly with Union Pacific Railroad, and a right-of-way over track owned by Denver & Rio Grande Western Railroad.

¶ 3 In 1994, the Property Tax Division of the State Tax Commission valued Utah Railway's property at $32,895,900, and the tax due was calculated according to that valuation. Utah Railway filed a formal protest with the Commission, arguing its property was worth approximately $17 million. Utah Railway contested several aspects of the Division's valuation, but primarily asserted that the Division had employed methodologies that improperly included intangible assets, which are not subject to taxation under governing constitutional and statutory standards.

1. Utah Railway's appraiser addressed three approaches to valuation—cost, income, and market—but relied most heavily on the income approach. Utah Railway's original protest, on the other hand, contended that the cost approach was the only method that adequately removed intangibles from the calculation of value. All parties agreed that a cost approach to valuation yielded a property valuation of roughly $17 million.

2. Utah Railway's appraiser testified that "the assignment [given him by Utah Railway] did not call for a segregation of the taxable amount versus nontaxable aspects."

3. Specifically, the Commission found as follows:
   Most of the negative comments were what could clearly be deemed to be differences in appraisal judgment, with no clear cut determination that such methodologies are either clearly correct or clearly erroneous. There were some negative comments made about each appraisal which could place in question the determination and precise correctness of

¶ 4 A formal hearing was scheduled. Prior to the hearing, both parties were directed to submit their appraisals of the value of Utah Railway's property. The Division did not submit its original appraisal into evidence, but instead submitted and defended a new appraisal. The new appraisal valued Utah Railway's property at approximately $37 million. Utah Railway submitted an appraisal of $20.5 million.[1] Utah Railway's appraiser did not attempt to segregate intangible from tangible values,[2] but Utah Railway nevertheless argued that the Commission had a constitutional and statutory duty to do so.

¶ 5 The Commission rendered its final decision based on the testimony and evidence presented at the hearing. It determined that the fundamental factual dispute between the parties concerned economic forecasts for the continuing viability of Utah Railway's business. The Commission refused to adopt either of the appraisals presented to it. The Commission rejected Utah Railway's appraisal because it found that the information Utah Railway had supplied did not accurately reflect Utah Railway's own beliefs about future coal transportation prospects, and could not, therefore, support Utah Railway's arguments for a lower valuation. The Commission also rejected the Division's request for a higher valuation because it determined that the Division had not adequately sustained its burden of proof.[3] In

each of those appraisals. However, since the information given to the appraiser of [Utah Railway] by the company was not sustained, the assumptions upon which that appraisal was prepared cannot be validated. The Commission therefore determines that the appraisal of [Utah Railway] does not correctly determine the fair market value of the subject property, primarily because the information provided by the company which the appraiser used, the Commission finds is not credible or verifiable, and is too speculative for an appraisal of value to be based upon that premise.
[The Division] has suggested that the value of the property be increased approximately 10% beyond the original tax notice which was sent by [the Division]. The Commission does not specifically find that any matter in the appraisal was erroneous, but [Utah Railway] did raise issue with some of the methodologies used by [the Division's] appraiser, and, in fact, stated that some items had been deducted when they should have been added. That testimony was unrebutted. Therefore, the Com-

its findings of fact, conclusions of law, and final decision, the Commission adopted the original valuation of $32,895,900. In so doing, the Commission did not address Utah Railway's constitutional and statutory arguments concerning separation and removal of intangibles for purposes of establishing taxable value, nor did it explain any basis for refusing to address the issue.

## DISCUSSION

■ ¶ 6 On Utah Railway's petition for review, we "grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review, and ... [we] grant the commission no deference concerning its conclusions of law, applying a correction of error standard." Utah Code Ann. § 59-1-610(1) (1996); *see also Salt Lake City Southern R.R. Co. v. Tax Comm'n*, 1999 UT 90, ¶ 7, 987 P.2d 594, 596. Moreover, we conduct our review in light of the burdens the taxpayer carries before the Commission, where the protesting taxpayer is required "not only to show substantial error or impropriety in the assessment, but also to provide a sound evidentiary basis upon which the Commission could adopt a lower valuation." *Utah Power & Light Co. v. Tax Comm'n*, 590 P.2d 332, 335 (Utah 1979).

¶ 7 Utah Railway presents three fundamental arguments: (1) the Commission's adoption of the original property valuation was not supported by substantial evidence because the Division did not submit the original appraisal supporting that valuation into evidence; (2) the appraisal was not based on reasonable, reliable indicators of value; and (3) the Division and the Commission violated the constitutional and statutory proscription against taxing intangibles by failing to employ valuation methodologies designed to exclude those intangibles.

## I. THE DIVISION'S FAILURE TO SUBMIT ITS ORIGINAL APPRAISAL

■ ¶ 8 Before this court, Utah Railway relies heavily on the first argument. It as-serts the Commission may not adopt a property valuation unless available documentation supporting the valuation is placed in the record. We agree. In *Utah Power & Light Co.*, we held that "the Commission must have a sound evidentiary basis for its decision." *Id.* In this case, the Division chose to effectively abandon its original appraisal and failed to even introduce that appraisal into evidence. As a consequence, the Commission had no evidence before it upon which to base its ultimate decision to adopt the original valuation.

■ ¶ 9 The Commission correctly notes that Utah Railway had the burden of demonstrating substantial error and providing an evidentiary basis for the Commission to adopt a lower valuation. *See id.* at 334–35. Based on this premise, the Commission argues that the original valuation is entitled to a "presumption of correctness." We agree that such a presumption is necessarily implied by our holding in *Utah Power & Light Co.* That presumption does not arise, however, unless and until available evidence supporting the original property valuation is submitted to the Commission.

■ ¶ 10 In this case, because the Division is in the best position to present the evidence supporting its valuation, and because we think it unfair to impose upon the taxpayer an obligation to ensure that the record includes a property valuation the taxpayer contests, we hold that the Division is the entity obligated to do so. *Cf. Banberry Dev. Corp. v. South Jordan City*, 631 P.2d 899, 903–04 (Utah 1981) (in context of impact fees, agency with most accessibility to relevant information has burden of disclosure). Where a taxpayer challenges the valuation of property before the Commission, the entity defending against the challenge must present the available evidence supporting the original valuation. Once that is done, the taxpayer, or any other entity seeking an adjustment of the original valuation, must meet its twofold

mission cannot determine that the slight increase proposed by [the Division's] appraiser is sufficiently proven to justify an increase to the value of the property of [Utah Railway] for ad valorem tax purposes. [The Division] did not sustain its burden of proof to establish that the value should be increased to a higher amount.

burden of demonstrating "substantial error or impropriety in the [original] assessment," and providing "a sound evidentiary basis upon which the Commission could adopt a lower valuation." *Utah Power & Light Co.*, 590 P.2d at 335.

## II. THE RELIABILITY OF THE DIVISION'S VALUATION METHODOLOGIES

¶ 11 Utah Railway's second argument is rendered moot by our decision on the first issue. Utah Railway attacks the accuracy and reliability of the methodologies ostensibly employed to arrive at valuation of its property. However, Utah Railway has already explicitly argued the Commission did not rely on any documentary evidence of the valuation it affirmed. Indeed, the appraisal supporting that valuation was never placed in the record and neither party attempted to comprehensively attack or defend it. Because the Commission did not rely on any valuation methodologies to support its holding, Utah Railway cannot attack non-existent bases for decision.

## III. THE CONSTITUTIONAL AND STATUTORY PROSCRIPTION ON TAXATION OF INTANGIBLES

■ ¶ 12 Utah Railway argued in its initial protest and in its closing arguments before the Commission that the Commission had a constitutional and statutory duty to make practicable and reasonable attempts to segregate intangibles and deduct their value from the overall property valuation. *See* Utah Const. art. XIII, § 2(1) ("All tangible property ... shall be taxed at a uniform and equal rate...."); Utah Code Ann. § 59–2–102(19) (1996) (" 'Property' ... does not include ... intangibles."); *id.* § 59–2–1101(2) ("The following property is exempt from taxation: ... (g) intangible property.") Utah Railway renews this argument on appeal. We are unable to address this issue because the Commission failed to make findings or rulings upon which to base our review.

■ ¶ 13 The constitutional and statutory issue presented to the Commission encompasses both a legal dimension and a factual dimension grounded in agency expertise. Whether a valuation methodology or group of methodologies meet the constitutional and statutory test of excluding intangibles from valuation of property is a legal question. Applying that legal query to the facts of any given case, however, is inextricably linked to a specific area of expertise vested in the Commission. *See Utah Power & Light Co.*, 590 P.2d at 335. A legal conclusion about the constitutional and statutory propriety of a particular property valuation must be premised on the feasibility of separating tangible from intangible property within the particular context at issue, which in turn must be balanced against the accuracy with which any given valuation methodology captures the fair market value of the property. *See, e.g., Schmidt v. Tax Comm'n*, 1999 UT 48, ¶¶ 5–9, 980 P.2d 690, 691–92 (describing Commission's discretion to apply appropriate valuation methodologies according to relevant factual circumstances); Utah Code Ann. § 59–2–102(8) (defining fair market value for purposes of the Property Tax Act).

¶ 14 Our ability to address this argument on the merits requires specific findings and rulings, which the Commission did not provide in this case. Although Utah Railway's own appraiser did not attempt to segregate intangible and tangible values, Utah Railway did articulate a coherent argument for exclusion of intangibles in the valuation process. Utah Railway's attorney examined its appraiser on the issue and elicited some testimony regarding methods that could be employed to ensure intangibles were not included in the calculation of value. The argument regarding exclusion of intangibles was thus presented to the Commission at the hearing and in Utah Railway's post-hearing brief. The Commission either should have addressed it or should have provided a supportable basis for refusing to do so.

¶ 15 In conclusion, we remand this case to the Commission for entry of appropriate findings and rulings to support its decision. The Division should submit its original ap-

praisal and the Commission may receive any further evidence or testimony it deems necessary to support its decision according to the dictates of this opinion. The Commission should also specifically address the question of whether the methodologies employed by the Division violated the constitutional and statutory proscriptions against taxation of intangibles, or it should explain the basis for its refusal to do so.

¶ 16 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.