*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2013 UT 24**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ASC UTAH, INC. and
STEPHEN A. OSGUTHORPE,
*Plaintiffs and Appellees,*

*v.*

WOLF MOUNTAIN RESORTS, L.C.,
*Defendant and Appellant,*
and
ENOCH RICHARD SMITH,
*Intervenor and Appellee.*

No. 20110742
Filed May 3, 2013

Third District, Silver Summit Dep't
Honorable Bruce C. Lubeck
No. 060500297

Attorneys:

John P. Ashton, Clark K. Taylor, John R. Lund, Kara L. Pettit,
David W. Scofield, Christopher Jon Finley, M. David Eckersley,
Salt Lake City, for plaintiffs and appellees

Steve K. Gordon, Todd D. Wakefield, Joseph E. Wrona,
Salt Lake City, for defendant and appellant

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE LEE, and JUDGE ORME joined.

Having recused herself, Justice Parrish does not participate
herein; Court of Appeals Judge Orme sat.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1     Wolf Mountain Resorts, L.C. (Wolf Mountain) appeals
following a trial in which the jury found it liable to ASC Utah, Inc.
(ASCU) for $54,437,000 in damages. Wolf Mountain argues that the
district court committed reversible error when it denied Wolf Mountain's motions for summary judgment, determined that the
Amended and Restated Development Agreement for the Canyons

Specially Planned Area (SPA Agreement) is ambiguous, and denied Wolf Mountain's motions for post-judgment relief. ASCU argues that the entire appeal is moot because it purchased Wolf Mountain's appellate rights in this case (and is happy to drop the appeal against itself). We determine that ASCU did not acquire Wolf Mountain's appellate rights and that the appeal is therefore not moot. We then consider the merits of Wolf Mountain's appeal and affirm.

## BACKGROUND

¶2 Wolf Mountain and ASCU have been litigating their rights and responsibilities regarding development of the Canyons Resort in Park City, Utah, for several years.[1] After a seven-week trial in 2011, the jury awarded ASCU $54,437,000 in damages. Several months later, in an effort to collect on this judgment, ASCU filed an Application for Writ of Execution. The Application listed Wolf Mountain's real and personal property, including "[c]laims asserted in litigation entitled ASC Utah, Inc. v. Wolf Mountain Resorts, L.C., and all actions consolidated therein, Third Judicial District, Summit County, State of Utah, Consolidated Case No. 060500297." On the same day, the district court issued a Writ of Execution authorizing the seizure and sale of the property listed in the Application to the extent necessary to satisfy the judgment.

¶3 Wolf Mountain twice moved the district court to stay enforcement of the Writ of Execution. The district court denied these motions because Wolf Mountain had not posted a supersedeas bond, as required by rule 62(d) of the Utah Rules of Civil Procedure (URCP). Instead, Wolf Mountain had offered real property as security. The district court held hearings on whether the Writ of Execution was wrongfully obtained and whether any of the listed property was exempt from seizure. Following these hearings, the court ordered Wolf Mountain's real and personal property to be sold to satisfy the judgment. Wolf Mountain did not appeal from the Writ of Execution or any of the related orders or proceedings. Nor did it seek a stay from this court.

¶4 Thereafter, at a public sale conducted by a Summit County sheriff's deputy, ASCU purchased "all rights, title, claims and inter-

---

[1] For a more detailed account of this appeal's factual and procedural background, see *Osguthorpe v. Wolf Mountain Resorts, L.C. (Wolf Mountain III)*, 2013 UT 12, ¶¶ 2–6, __ P.3d __; *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C. (Wolf Mountain II)*, 2010 UT 65, ¶¶ 2–9, 245 P.3d 184, and *Osguthorpe v. Wolf Mountain Resorts, L.C. (Wolf Mountain I)*, 2010 UT 29, ¶¶ 2–9, 232 P.3d 999.

ests of Wolf Mountain" in the "[c]laims asserted in [the present] litigation." The property description in the Certificate of Sale was drawn verbatim from the Application for Writ of Execution. *See supra* ¶ 2. ASCU then moved this court to dismiss the appeal as moot, arguing that because ASCU now owned Wolf Mountain's appellate rights, there was no longer a controversy. We deferred ruling on the motion and instructed the parties to brief the merits of the appeal. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶5     Wolf Mountain appeals various issues involving different standards of review. We set forth the proper standard as we address each issue.

## ANALYSIS

¶6     Because mootness is a jurisdictional matter, *Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶¶ 18–19, 289 P.3d 582, we begin by addressing ASCU's contention that no actual controversy exists.

## I. MOOTNESS

¶7     ASCU contends that "no actual controversy exists and the issues in the appeal are moot because Wolf Mountain no longer has any rights, title, claims or interests in this litigation." Because Wolf Mountain did not appeal from the Writ of Execution, we are not reviewing the execution proceedings or orders. *See Cheves v. Williams*, 1999 UT 86, ¶ 50, 993 P.2d 191 (holding that an "execution order . . . stands as a separate and distinct order from the underlying judgment and that, as such, . . . [a party must] file a separate notice of appeal to challenge it"). Rather, our task is to interpret the language of the Writ of Execution and the Certificate of Sale to determine what effect, if any, the sale had on Wolf Mountain's appellate rights.

¶8     The Certificate of Sale states that ASCU purchased "all rights, title, claims and interests of Wolf Mountain" in the "[c]laims asserted in litigation entitled ASC Utah, Inc. v. Wolf Mountain Resorts, L.C., and all actions consolidated therein, Third Judicial District, Summit County, State of Utah, Consolidated Case No. 060500297." Wolf Mountain argues that the word "claim" is synonymous with "chose in action," which we have defined as "a claim or debt upon which a recovery may be made in a lawsuit" and as "a right to sue." *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 12, 44 P.3d 699 (internal quotation marks omitted). ASCU does not offer a competing definition of "claim." It simply asserts that it has pur-

chased Wolf Mountain's appellate rights. Black's Law Dictionary defines "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court" and as "[a] demand for money, property, or a legal remedy to which one asserts a right." BLACK'S LAW DICTIONARY 281–82 (9th ed. 2009).

¶9     We agree with Wolf Mountain that the term "claim" refers to a demand for affirmative relief, as opposed to a defense or a right to appeal. Thus, the term "[c]laims" in the Certificate of Sale did not encompass Wolf Mountain's appellate rights in this case. Accordingly, we need not determine whether, in the case of a certificate of sale that unambiguously purported to transfer appellate rights, Utah public policy would prevent a judgment creditor from executing on a judgment debtor's right to appeal.[2]

## II. MERITS

¶10     Having established that an actual controversy exists, we turn to the merits of the appeal. Wolf Mountain argues that the district court erred when it denied Wolf Mountain's motions for summary judgment, ruled that section 3.2.6 of the SPA Agreement is ambiguous, and denied Wolf Mountain's motion for judgment notwithstanding the verdict and its motion in the alternative for a new trial and for remittitur. We affirm.

### A. Motions to Dismiss

¶11     ASCU argued at trial that Wolf Mountain breached its agreements with ASCU by failing to convey certain land for construction of a golf course. Wolf Mountain filed three motions for summary judgment based on the following asserted facts, which it alleged to be undisputed: (1) that Wolf Mountain fulfilled its obliga-

---

[2] In *RMA Ventures California v. SunAmerica Life Insurance Co.*, 576 F.3d 1070, 1074–76 (10th Cir. 2009), the Tenth Circuit granted the defendants' motion to dismiss after the defendants executed on the plaintiffs' appellate rights under circumstances similar to those in this case. The court "found no Utah authority . . . precluding the execution sale" and therefore upheld the sale. *Id.* at 1075. We note that we would not uphold such a sale without first undertaking a careful review of the constitutional and other implications of allowing judgment creditors to execute on judgment debtors' appellate rights. See Kristopher Wood, Comment, *Short Circuiting the Justice System: How Defendants Are Misusing Writs of Execution*, 39 PEPP. L. REV. 747 (2012), for a discussion of some of the constitutional and policy interests at stake.

tions by actually conveying the land; (2) that Wolf Mountain had no obligation to convey the land because ASCU had not fulfilled a condition precedent to the obligation; and (3) that Wolf Mountain had no obligation to convey the land under the SPA Agreement, because the only provision in that agreement addressing conveyance of the land is merely an agreement to agree. The district court ruled that summary judgment was not appropriate because of factual disputes that the jury needed to resolve.

¶12    Generally, the denial of a motion for summary judgment is not reviewable on appeal because the movant has had "the opportunity to fully litigate [at trial] the issues raised in the summary judgment motion[]." *Wayment v. Howard*, 2006 UT 56, ¶ 19, 144 P.3d 1147. Appellate review is available only when a motion for summary judgment is denied on a purely legal basis. *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152.

¶13    Here, although the interpretation of the agreements between Wolf Mountain and ASCU presented a legal question, whether and when Wolf Mountain conveyed the property and whether and when any condition precedent was fulfilled were factual questions. Furthermore, interpretation of the contracts may not have been possible until underlying factual disputes were resolved. Indeed, the district court explicitly stated that it denied the motions because of factual disputes. Appellate review is therefore unavailable.

### B. Ambiguity

¶14    Wolf Mountain appeals the district court's determination that section 3.2.6 of the SPA Agreement (Section 3.2.6) is ambiguous. Wolf Mountain asserts that ASCU's interpretation, which was adopted by the district court, was contradicted by key provisions in other related contracts between the parties and ignored several canons of contract interpretation. Wolf Mountain claims that its own interpretation "gave effect to all contract provisions, harmonized all provisions, and did not render any of the provisions meaningless."

¶15    We have no way to evaluate these contentions, however, because Wolf Mountain has not presented the competing interpretations of Section 3.2.6 or even identified the portion of Section 3.2.6 found to be ambiguous. Elsewhere in its brief, Wolf Mountain argues that Section 3.2.6 was merely an "agreement to agree." Thus, we can infer that the district court may have held Section 3.2.6 to be ambiguous on that point. However, we will not exercise appellate review based on our best guess as to the subject of the appeal. Fur-

thermore, because Wolf Mountain has not explained what prejudice resulted from the court's finding of ambiguity, we cannot rule out the possibility of harmless error.

¶16   Appellants have the burden to clearly set forth the issues they are appealing and to provide reasoned argument and legal authority. *See* Utah R. App. P. 24(a)(9). Appellate courts are "not a depository in which [a party] may dump the burden of argument and research." *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (alteration in original) (internal quotation marks omitted). We accordingly decline to address this inadequately briefed issue. *See Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶ 11, 279 P.3d 391 (stating that the court has "discretion to not address an inadequately briefed argument" (internal quotation marks omitted)).

### C. Post-Judgment Relief

¶17   After the jury rendered its verdict, Wolf Mountain moved for judgment notwithstanding the verdict (JNOV) and, in the alternative, for a new trial and for a remittitur on damages. We affirm the district court's denial of these motions.

### 1. Motion for JNOV

¶18   Wolf Mountain argues that the district court erred in denying its JNOV motion under URCP 50(b). Because "[i]t is the exclusive function of the jury to weigh the evidence," *Child v. Gonda*, 972 P.2d 425, 433 (Utah 1998) (alteration in original) (internal quotation marks omitted), a jury verdict "should not be regarded lightly nor overturned without good and sufficient reason," *Bowden v. Denver & Rio Grande W. R.R. Co.*, 286 P.2d 240, 244 (Utah 1955). Accordingly, a district court may grant a JNOV motion only if there is no "basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination." *Braithwaite v. W. Valley City Corp.*, 921 P.2d 997, 999. We review rulings on JNOV motions for correctness. *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066 (Utah 1996).

¶19   Under these standards, Wolf Mountain's burden on appeal was to demonstrate that there was no basis in the evidence to support the jury's verdict. Wolf Mountain appears to have misapprehended this burden because it has presented no legal arguments as to the sufficiency of the evidence. Rather, Wolf Mountain has used the appeal as an opportunity to "re-argue the factual case . . . presented in the trial court." *Chen v. Stewart*, 2004 UT 82, ¶ 77, 100 P.3d 1177. ASCU's brief provides voluminous references to and summaries of the evidence supporting the verdict, and Wolf Mountain has

not explained why this evidence was "so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Child*, 972 P.2d at 434 (emphasis omitted). Wolf Mountain should have marshaled the evidence in compliance with Utah Rule of Appellate Procedure 24(a)(9) and then explained why the evidence supporting the verdict was insufficient.[3] Because Wolf Mountain has failed to carry its burden on appeal, we affirm the district court's denial of the JNOV motion.

2. Motion for a New Trial

¶20    Wolf Mountain argues that the district court further erred in denying its motion in the alternative for a new trial under URCP 59(a), which provides that a new trial may be granted if the movant makes certain showings. Wolf Mountain contends that the following grounds for a new trial are present here: "[e]xcessive . . . damages, appearing to have been given under the influence of passion or prejudice"; "[i]nsufficiency of the evidence to justify the verdict"; and "[e]rror[s] in law." UTAH R. CIV. P. 59(a)(5)–(7).

¶21    A motion for a new trial "invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited." *Davis v. Grand Cnty. Serv. Area*, 905 P.2d 888, 890 (Utah Ct. App. 1995), *overruled on other grounds by Gillett v. Price*, 2006 UT 24, ¶ 8, 135 P.3d 861. We will reverse a district court's ruling on a motion for a new trial "only if there is no reasonable basis for the decision." *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 805 (Utah 1991). District courts are required to explain the basis for their decisions only when they *grant* motions for a new trial—not when they deny such motions. *See* UTAH R. CIV. P. 52(a) ("The trial court need not enter findings of fact and conclusions of law in rulings on motions, except as [otherwise required]."); *Crookston*, 817 P.2d at 804 ("If the trial court determines that a new trial is warranted and grants the motion, it should describe the basis for its decision in the record such that an appellate court can have the benefit of those reasons."); *Golden Meadows Props., LC v. Strand*, 2011 UT App 421, ¶ 6, 268 P.3d 849 ("The district court was not required to enter findings of fact in conjunction with [its denial of] . . . the motion for a new trial.").

---

[3] "A party challenging a fact finding must first marshal all record evidence that supports the challenged finding." UTAH R. APP. P. 24(a)(9). See *Chen*, 2004 UT 82, ¶¶ 73–83, and *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733, for a more detailed explanation of the marshalling requirement.

¶22 The district judge who presided over a trial is in a far better position than an appellate court to determine, for example, whether the evidence was sufficient to justify the verdict or whether the jury awarded damages "under the influence of passion or prejudice." UTAH R. CIV. P. 59(a)(5)–(6). This is particularly true in the present case, where the record is thousands of pages long, the trial transcripts cover seven weeks of testimony and presentation of evidence, and the pre-trial litigation spanned several years. The district judge prefaced his ruling on Wolf Mountain's motion for a new trial by noting that he "sat through every moment of testimony, took substantial notes, . . . had the benefit of thousands of exhibits," and "heard every witness." He then ruled that

> on every issue where Wolf Mountain believes that evidence was insufficient there was credible and substantial evidence that supported the verdict. This is not to say that a verdict to the contrary, in Wolf Mountain's favor, could not have been equally justified. It could, but that is not what occurred. What Wolf Mountain has failed to do is demonstrate to this Court a dearth of evidence such that the verdict on each of the claims cannot stand.

Elsewhere in the order, the court identified the expert testimony upon which the jury based its verdict and noted as evidence of the jury's lack of passion or prejudice the fact that during deliberation, the jury sent the court a question to ensure that no multiplier or other factor would be applied to their damages award. Evidently, the jury wanted to award ASCU precisely $54,437,000—no more and no less. We are not persuaded that the district court abused its discretion in denying Wolf Mountain's motion for a new trial on the grounds of insufficient evidence or of passion or prejudice.

¶23 In contrast, the district court is not necessarily in a better position than an appellate court to identify its own errors of law. *Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 41, __ P.3d __. Thus, we review an appellant's allegations of legal error under URCP 59(a)(7) for correctness. *See id.* However, we will reverse and order a new trial only if we (1) identify a legal error that would be grounds for a new trial under URCP 59(a)(7) and (2) determine that the error "resulted in prejudice necessitating a new trial." *Gbur v. Golio*, 932 A.2d 203, 207 (Pa. Super. Ct. 2007), *aff'd*, 963 A.2d 443 (Pa. 2009) (internal quotation marks omitted).

¶24 Here, Wolf Mountain alleges that the district court erred in three ways: (1) by holding that the SPA Agreement was

ambiguous, (2) by allowing ASCU to amend its complaint in the middle of trial, and (3) by making several erroneous evidentiary rulings. As noted above, we decline to address the argument involving ambiguity in the SPA Agreement because that issue was inadequately briefed. *See supra* ¶ 16.

¶25 Wolf Mountain's second allegation is incorrectly labeled as a claim of legal error. It is actually a claim of abuse of discretion because district courts have discretion to allow parties to amend their pleadings "when justice so requires." UTAH R. CIV. P. 15(a). An abuse of discretion may be grounds for a new trial if it deprived a party of a fair trial. UTAH R. CIV. P. 59(a)(1). However, even if Wolf Mountain had correctly made this argument under URCP 59(a)(1), it would fail because the district court did not abuse its discretion in allowing ASCU to amend its complaint.

¶26 In ruling on a motion to amend, district courts must weigh "(1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party." *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 9, 104 P.3d 1242 (internal quotation marks omitted). Here, in January 2011, two months before trial, ASCU notified the district court and Wolf Mountain that it intended to move to amend its complaint to include a SPA Agreement claim. ASCU explained that before the district court's November 2010 ruling, ASCU had interpreted the SPA Agreement to preclude independent causes of action until default proceedings with Summit County had been completed. The court's November 2010 ruling apparently interpreted the SPA Agreement to permit independent claims before the default proceedings were completed. The district court communicated to Wolf Mountain that it planned to grant the motion to amend unless Wolf Mountain could show prejudice. Wolf Mountain was unable to show prejudice, and the court granted the motion. The district court properly considered the timeliness of and justification for ASCU's motion to amend and the possible prejudice to Wolf Mountain. Thus, the district court did not abuse its discretion when it granted the motion.

¶27 Finally, Wolf Mountain alleges several erroneous evidentiary rulings. We cannot review the majority of these rulings because Wolf Mountain has not explained why the district court excluded or admitted the evidence or why these rulings were in

error.[4] Because these arguments were inadequately briefed, we decline to address them. *See supra* ¶ 16.

¶28     The sole evidentiary issue we can address involves the exclusion of a document pertaining to ASCU's development plans. Wolf Mountain argues that the district court erred in excluding the document for lack of foundation because (1) "Hirasawa [presumably an ASCU employee] testified that it was prepared by his office and that he was familiar with it," (2) the parties stipulated to its authenticity, and (3) one of ASCU's damages experts relied on it. Regarding the first grounds, we disagree with Wolf Mountain's characterization of Mr. Hirasawa's testimony. Mr. Hirasawa agreed with the examining attorney's statement that the development plans were "the type of material that those under [him] would prepare for The Canyons," but he stated that he did not recognize the document or know when it was prepared or who prepared it. The second ground was not adequately presented to the district court. Wolf Mountain's attorney vaguely stated that the parties had entered a stipulation pertaining to "any documents produced by ASC." ASCU's attorney responded, "[W]e have not stipulated that everything in our files is admissible in evidence." Wolf Mountain did not dispute ASCU's response, provide further details regarding the scope or nature of the stipulation, or offer to provide the court a copy of the stipulation. Even if Wolf Mountain had given the district court a copy of the stipulation, we could not review the court's interpretation of it because Wolf Mountain has not provided us a citation to or copy of the stipulation. The third ground was not before the district court either. ASCU's damages expert had not yet testified at the time Wolf Mountain sought to admit the development plans. When the expert did testify, Wolf Mountain did not renew its efforts to admit the plans. Accordingly, the district court's ruling that Wolf Mountain did not provide an adequate foundation was proper. We therefore affirm the denial of Wolf Mountain's motion for a new trial.

---

[4] We are also unable to determine whether these evidentiary rulings involve legal questions or are purely discretionary matters. *State v. Whittle*, 1999 UT 96, ¶ 20, 989 P.2d 52 (noting that evidentiary rulings are generally reviewed for abuse of discretion but are reviewed for correctness "when the evidentiary ruling at issue is an independent legal issue and does not involve the balancing of factors"). Thus, we cannot determine even whether Wolf Mountain properly brought these claims under URCP 59(a)(7). *See supra* ¶ 25.

3. Motion for Remittitur

¶29    Wolf Mountain asserts that the district court erred in denying its request for a remittitur on damages. A remittitur is an alternative form of relief that a district court may provide when a new trial is warranted. *See Crookston*, 817 P.2d at 803 (explaining that a court may encourage parties to settle by "proposing a remittitur or additur to the jury's award of damages," to which the parties may agree in order to avoid a new trial). Where a district court has appropriately determined that a new trial is not warranted, there are no grounds for remittitur. Thus, in light of our conclusion that the district court appropriately denied Wolf Mountain's motion for a new trial, *see supra* ¶ 28, the court did not err in denying Wolf Mountain's request for remittitur.

**CONCLUSION**

¶30    We hold that ASCU did not acquire Wolf Mountain's appellate rights when it executed on its "[c]laims" in this litigation. However, because Wolf Mountain has failed to demonstrate that the district court erred or abused its discretion in any way, we affirm on the merits.