2019 UT App 6

## THE UTAH COURT OF APPEALS

EDWARD J. FRAUGHTON,
Petitioner,
*v.*
UTAH STATE TAX COMMISSION AND BOARD OF
EQUALIZATION OF SALT LAKE COUNTY,
Respondents.

Opinion
No. 20170430-CA
Filed January 10, 2019

Original Proceeding in this Court

Edwin S. Wall, Attorney for Petitioner

Bradley C. Johnson, Attorney for Respondent Board
of Equalization of Salt Lake County

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     In 2015, Edward J. Fraughton challenged the assessed value on his residence, claiming that promises made in 1973 by unidentified persons from South Jordan City (the City) were key to determining the correct value. Fraughton's challenge was, in large part, successful, resulting in just a three percent difference in the assessed value from Fraughton's claimed value. But Fraughton refused to stipulate to the new assessed value and appealed to the Utah State Tax Commission (the Commission). Fraughton now seeks review of the Commission's final decision that Fraughton had neither shown an error in the assessment nor provided a sound evidentiary basis for a lower residential property value. We are unpersuaded by Fraughton's arguments and decline to disturb the decision of the Commission.

BACKGROUND

¶2    Edward Fraughton purchased an abandoned brick church in the City in 1973. Fraughton, an artist, planned to preserve the historic building and the 2.41 acres of land on which it sat (the Property) for use as his workshop and as a residence for his family.

¶3    For the 2015 tax year, the Property was assessed at $1,163,780. In September 2015, Fraughton appealed that assessment to the Salt Lake County Board of Equalization (the Board), arguing that the fair market value of the Property was $704,480. In a March 2016 hearing, the Board reduced the assessed value to $947,000 based on evidence submitted by the Salt Lake County Assessor. The Board noted that Fraughton had not "provided evidence to establish a value." Fraughton then appealed the Board's decision to the Commission.

¶4    At the Commission hearing in April 2017, Fraughton did not provide comparable sales values, an appraisal, or any other evidence of the Property's value. Instead, he argued that the fair market value of the Property should be based on a "reasonable adjustment" to the purchase price instead of "speculative" market value. In contrast, the Commission based its conclusion on a report submitted by an appraiser for Salt Lake County. The appraiser, relying primarily on comparable land sales, valued 1.48 acres of the Property at $8.65 per square foot and .93 acres of the Property at $4.11 per square-foot, for a total value of $724,155 in land. The appraiser noted that nearly all of the value consisted of the land, with the building valued at only $1,500, for a total rounded value of $725,700 for the Property.

¶5    The Salt Lake County appraiser also stated that the county assessor's office contacted Fraughton and offered to stipulate to a value of $725,700 for the Property. Fraughton had requested an assessed value of $704,480 from the Board in August 2015, but in October 2015, he declined to stipulate to Salt Lake County's adjusted lower value. These two values differ by $21,200, or about three percent.

¶6    The Commission also received evidence at the hearing, in the form of a letter from the City, that the Property was zoned—current as of October 2015—as RM or "Residential Multi-Family" by the City, and it had been in that zoning category since at least 1987. Allowed uses in RM zoning include various residential dwellings, community and public safety services, worship, public utilities, and daycare. Fraughton testified that the Property was indeed zoned RM, but he contended that this designation meant "Rural Mix," which allowed "a mix of agricultural and residential uses as well as an art studio." He further contended that the City had agreed to this special zoning designation when he purchased the property in 1973.[1]

¶7    After considering the evidence presented, the Commission set the fair market value of the Property at $725,700. The Commission limited its decision to determining the Property's value and did not address the zoning issue. Fraughton petitions for judicial review.

## ISSUES AND STANDARDS OF REVIEW

¶8    Fraughton brings two claims. First, he contends the Commission erred in its determination of the fair market value of the Property. When reviewing proceedings before the Commission, this court "grant[s] the Commission deference concerning its written findings of fact, applying a substantial evidence standard on review," and grants "no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained

---

1. No exhibit or other evidence corroborates that zone RM means anything other than "Residential Multi-Family." Moreover, there is no documentary or testimonial evidence, other than Fraughton's recollection, that the City changed any zoning designation of the Property.

in a statute at issue before the appellate court." Utah Code Ann. § 59-1-610(1) (LexisNexis 2015); *see also Atlas Steel, Inc. v. Utah State Tax Comm'n*, 2002 UT 112, ¶ 14, 61 P.3d 1053 (stating that the Commission's findings of fact receive a substantial evidence standard of review, but its conclusions of law receive no deference).

¶9    Second, Fraughton argues that the Commission violated the federal and state constitutions by basing the fair market value of the Property on comparable property values without taking into consideration "non-intrinsic human values," such as open space, history, and aesthetics. This court reviews constitutional questions for correctness. *State v. Van Dyke*, 2009 UT App 369, ¶ 18, 223 P.3d 465.


ANALYSIS

I. The Commission Correctly Determined the Fair Market Value
of the Property

¶10    When challenging an assessment made on property by the Commission, the "protesting taxpayer is required not only to show substantial error or impropriety in the assessment, but also to provide a sound evidentiary basis upon which the Commission could adopt a lower valuation." *Utah Ry. Co. v. Utah State Tax Comm'n*, 2000 UT 49, ¶ 6, 5 P.3d 652 (cleaned up). Thus, Fraughton, as the protesting taxpayer, has a two-pronged burden. He must (1) show that the Commission made a substantial error in arriving at the Property's current value and (2) provide a sound evidentiary basis for the Commission to change the valuation. *See id.*[2] We address each prong in turn.

---

2. We note that although Fraughton recognizes the existence of both prongs in his brief, he conflates them in his analysis by stating that he has "provided evidence that the current value contains error."

A.   Fraughton Fails to Show That the Commission Erred in Arriving at the Property's Current Value

¶11   On review, Fraughton does not challenge the actual dollar value the Commission placed on the Property; rather, he challenges the zoning designation. Fraughton contends that the City, in an effort to encourage completion of the purchase of the Property, agreed in 1973 to rezone, or spot zone,[3] the Property as "Rural Mix." Fraughton argues that his testimony of what happened in 1973 shows that there has been an error in the zoning designation of the Property. He further argues that the Commission should have obtained from the City evidence of the Property being zoned Residential Multi-Family in 1973 if the Property had, in fact, been zoned Residential Multi-Family at that time. Because the City failed to provide such evidence to the Commission, Fraughton argues that the Rural Mix zoning designation should be grandfathered to the present. He asserts, "The zoning as of and from 1973 should not merely be presumed based on the [City planner's] evidence as to the zoning . . . at least of 1987." In a nutshell, Fraughton's argument is that (1) he was told by an unidentified City official that the Property would be spot-zoned as Rural Mix in 1973 when he purchased it and (2) the Commission has not provided evidence that this putative Rural Mix zoning was ever changed.

¶12   Fraughton's argument is a classic red herring in that he is attempting to bring the Commission into a dispute that essentially involves a disagreement that he has with the City.[4]

---

3. "Under Utah's jurisprudence, spot zoning occurs when a municipality either grants a special privilege or imposes a restriction on a particular small property that is not otherwise granted or imposed on surrounding properties in the larger area." *Tolman v. Logan City*, 2007 UT App 260, ¶ 15, 167 P.3d 489.

4. City records show that the Property was zoned Residential Multi-Family from at least 1987. The Commission relied on the

(continued…)

Therefore, Fraughton's evidence about an oral pledge given in 1973 is largely irrelevant to the issue before this court. To persuade this court, Fraughton needed to provide material evidence that a pledge allegedly made in 1973 was acted upon and, therefore, that the Commission made a substantial error in arriving at the Property's current value. *See Utah Ry.*, 2000 UT 49, ¶ 6. Fraughton has failed to do so, and, more importantly, he has

---

(…continued)

City's zoning designation to establish the assessment value of the Property. Fraughton argues that the Commission should investigate whether "RM" means "Rural Mix," as Fraughton contends, or "Residential Multi-Family," as the City indicated in its letter. The essence of Fraughton's argument is that the City has applied the incorrect zoning designation to the Property. But the Commission's task is to determine the fair market value of the Property, *see* Utah Code Ann. § 59-2-103 (LexisNexis 2015), not to resolve zoning disputes between residents and municipalities. Although the zoning designation is a factor in determining fair market value, *see Palazzolo v. Rhode Island*, 533 U.S. 606, 625 (2001) (stating that fair market value depends on "restrictions on use imposed by legitimate zoning or other regulatory limitations"), the Commission's task is limited to assessing and taxing property on the basis of its fair market value as of the beginning of the calendar year. *See University Heights, Inc. v. State Tax Comm'n*, 364 P.2d 661, 662 (Utah 1961) ("[T]he authority of the Commission over local assessments is a general supervisory one to enable it to assist in keeping the values for property tax purposes in counties and localities on a fair and equitable basis in relation to each other, rather than to suppose it was intended that the Commission would maintain active detailed supervision of the appraisals of all of the individual properties in the state."). Fraughton appears to assume, but offers no support for his assumption, that the Commission has the authority to revise the zoning designations made by municipalities.

failed to provide evidence that the Property ever was zoned otherwise than as identified by the City in 2015.

¶13 In contrast, the Commission acted on evidence that the Property was zoned as Residential Multi-Family in October 2015 and that it has been so zoned since at least 1987. If the Property was zoned Residential Multi-Family in 1987, the presumption, in the absence of evidence of a pre-1987 change to the contrary, is that it was zoned Residential Multi-Family in the years before. Fraughton fails to explain why his assertion regarding how the Property was zoned in 1973 is any more credible than the Commission's evidence of the Property's 2015 and 1987 zoning designation. And as a protesting taxpayer, the evidentiary burden is on Fraughton. *Id.*

¶14 Fraughton admits that no change in zoning status can occur in the absence of notice and a hearing, implying that the Property must currently be zoned Rural Mix because there was no notice or hearing regarding a change in the zoning to Residential Multi-Family. Yet this is exactly what Fraughton infers happened between 1973 and 1987 when he contends that the Property's zoning was improperly changed from Rural Mix to Residential Multi-Family. One possible explanation for the lack of evidence about notice and a hearing is that the zoning change was done illicitly. Yet Fraughton offers no evidence of such an illicit change other than his personal, uncorroborated contention. A more likely and simpler explanation is that there is no evidence of a change in zoning because the zoning designation was never changed. In any event, even if the Property is not currently zoned correctly, that fact does not change the current market value. Ultimately, zoning is a point of contention between Fraughton and the City having nothing to do with the original assessing authority, the County. Moreover, these facts do not inform the question on review, which is whether an evidentiary basis exists for the Commission's determination.

¶15 Therefore, we conclude that Fraughton's assertions regarding the 1973 zoning status of the Property fail to show that

the Commission erred when it relied on evidence of the Residential Multi-Family zoning status produced by the City.

B.      Fraughton Fails to Provide a Sound Evidentiary Basis to Support Adopting a Lower Valuation

¶16    In addition to showing that the Commission made an error in arriving at the value of the Property, Fraughton must also provide a sound evidentiary basis for the Commission to adopt a lower value. *Utah Ry. Co. v. Utah State Tax Comm'n*, 2000 UT 49, ¶ 6, 5 P.3d 652. Fraughton has not satisfied this prong either.

¶17    At the hearing before the Commission, Fraughton did not put forward any evidence regarding the value of the Property. He did not provide comparable sales for the Property, nor did he provide an appraisal or any other evidence of its value. Indeed, Fraughton explicitly concedes that he "did not submit any valuation evidence."[5]

¶18    In this regard, Fraughton's case bears striking similarity to *Utah Power & Light Co. v. Utah State Tax Commission*, 590 P.2d 332 (Utah 1979). There, a utility company protested the assessment placed on one of its properties following a hearing before the Commission. *Id.* at 333. After the court determined that there had been no error in the method of assessment, it also stated that the utility appeared to argue "that it is entitled to a reduction of its assessment if it shows any error to its disadvantage in the method of evaluation or the computation of

---

5. Fraughton may have decided not to press this point before the Commission because the value he requested before the Board and the value arrived at by Salt Lake County were already very close, at least for the purpose of imposing a property tax. Rather, Fraughton's arguments on review center on changing the zoning status of the Property to a more restrictive category—a change that presumably would have resulted in a lower assessed value.

the Commission's original assessment." *Id.* at 335. Because the purpose of a proceeding before the Commission is to "determine what should be the fair, reasonable and proper valuation and assessment, . . . where the taxpayer claims error, [the taxpayer] has an obligation . . . to provide a sound evidentiary basis upon which the Commission could adopt a lower valuation." *Id.* The court noted it was "significant here that [the utility company] . . . presented no alternative evaluation or appraisal which could be subject to critical scrutiny by the Commission." *Id.* Likewise, here it is not enough for Fraughton to show that there has been an error. *See Utah Ry.*, 2000 UT 49, ¶ 6. He must also provide an "alternative evaluation or appraisal" by which the Commission could determine "fair, reasonable and proper valuation and assessment" of the Property. *See Utah Power & Light*, 590 P.2d at 335; *see also Utah Ry.*, 2000 UT 49, ¶ 6.

¶19 Thus, we conclude that Fraughton also failed to meet the second prong of his burden: showing a sound evidentiary basis to the Commission for arriving at a lower value for the Property.

## II. Fraughton's Constitutional Claim Was Inadequately Briefed

¶20 We do not reach the substance of Fraughton's constitutional claim because this issue has not been properly briefed. "We have long held that we have discretion to not address an inadequately briefed argument. Rather, a party must plead his claims with sufficient specificity for this court to make a ruling on the merits. We will not assume a party's burden of argument and research." *Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944 (cleaned up). "We accordingly decline to address [an] inadequately briefed issue." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 16, 309 P.3d 201.

¶21 An adequate brief provides "meaningful legal analysis" and "fully identifies and analyzes the issues with citation to relevant legal authority." *State v. Hawkins*, 2016 UT App 9, ¶ 60, 366 P.3d 884; *see also* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on

appeal."). "A brief is inadequate when it merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." *Smith v. Four Corners Mental Health Center, Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904 (cleaned up). "Under this standard, [Fraughton] inadequately briefed this claim. Accordingly, he fails to carry his burden of persuasion on [judicial review]." *See Hawkins*, 2016 UT App 9, ¶ 60.

¶22 Fraughton argues in his brief that taxing the Property based on its fair market value is "neither fair, equitable, or just." Instead of a fair market value approach, he argues that "both state and federal constitutional principles" require the "consideration of 'non-intrinsic human values'" in determining a property's value. In support of this proposition, Fraughton claims that the "Declaration of Independence and the United States Constitution were written to establish a possible means for achieving humanity's highest form for civil human engagement." "[T]hese meaningful, lofty, fair and noble principles," Fraughton asserts, require the State of Utah to honor the individual's right to possess and protect property. Therefore, Fraughton concludes, "Utah's method of taxing real estate based solely on 'fair market value,' is neither fair, equitable or just. It entirely discriminates against any 'non-intrinsic human values.' As such, the tax law as applied is unconstitutional."

¶23 In his brief, Fraughton cites only one constitutional provision—Article 1, Section 1 of the Utah Constitution—as he makes his argument, and this he does in passing.[6] He fails to explain how the Commission's fair market valuation method

---

6. This Article states: "All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; to worship according to the dictates of their consciences; to assemble peaceably, protest against wrongs, and petition for redress of grievances; to communicate freely their thoughts and opinions, being responsible for the abuse of that right." Utah Const. art. I, § 1.

violates this provision. He cites no case law supporting his position that fair market valuation is unconstitutional. Nor does he attempt to explain why the fair market value standard is unconstitutional when the Utah Constitution itself states that "all tangible property in the State . . . shall be . . . assessed at a uniform and equal rate in proportion to its fair market value." Utah Const. art. XIII, § 2.

¶24    Fraughton's broad statements are simply not enough to make a cogent argument concerning the constitutional fairness, equity, and justness of the fair market value standard. And "we will not exercise appellate review based on our best guess as to the subject of the appeal." *ASC Utah*, 2013 UT 24, ¶ 15. As our supreme court has "repeatedly noted, we are not a depository in which a party may dump the burden of argument and research." *Four Corners Mental Health*, 2003 UT 23, ¶ 46 (cleaned up).

¶25    Therefore, we decline to further address Fraughton's constitutional arguments concerning the fair market value standard for property tax determinations because this issue has been inadequately briefed.

CONCLUSION

¶26    Fraughton's arguments are unpersuasive. Fraughton has not shown that there was an error in the assessment of the Property, nor has he presented a sound evidentiary basis for a lower value on the Property. Finally, we decline to address Fraughton's constitutional arguments concerning fair market value because they are inadequately briefed. For the foregoing reasons, we decline to disturb the decision of the Commission.

———————