1999 UT 66

Phillip A. and Natalie R. **MALLINCKRODT,** TRS, Petitioners,

v.

SALT LAKE COUNTY; County Board of Equalization of Salt Lake County; State of Utah; and Utah State Tax Commission, Respondents.

No. 981514.

Supreme Court of Utah.

July 16, 1999.

---

Philip A. Mallinckrodt, Salt Lake City, for petitioners.

David E. Yocom, Mary Ellen Short, Salt Lake City, for Salt Lake County respondents.

Jan Graham, Att'y Gen., Susan L. Barnum, Michelle Bush, Asst. Att'ys Gen., Salt Lake City, for State respondents.

STEWART, Justice:

¶ 1 This case is a review of a Utah State Tax Commission decision affirming the Salt Lake County Board of Equalization's valuation of Phillip A. and Natalie R. Mallinckrodt's property for the 1995 tax year. The Mallinckrodts argue that (1) the valuation is not supported by substantial evidence and (2)

they have proved a lower fair market value. We affirm.

¶2 The subject property is a 17.6–acre lot located near 2500 East 6200 South in Salt Lake City. The Mallinckrodts' residence lies on two acres. The house is a 101–year–old stone two-story house with six bedrooms and five full baths, totaling 6516 square feet. It has a 2–car garage, a swimming pool and bath house, and other outbuildings. The other 15.6 acres were undeveloped in 1995. The only access to the property is a narrow private lane, which in 1995 was the subject of a pending legal dispute over ownership. Because of the litigation and the narrow access lane, the County would not allow a subdivision of the 15.6 acres; consequently, sale of those acres was unlikely in 1995.

¶3 For the 1995 year, the Salt Lake County Assessor's Office valued the property at $4,774,310, resulting in a $64,243.89 tax. On appeal, the Board reduced that value to $3,180,000, resulting in a $39,923.64 tax. The Mallinckrodts appealed to the Commission.

¶4 Before the Commission, the Mallinckrodts presented an unsigned estimate by a general certified appraiser of the "current minimum market value" of the property of $1,280,000. Of that, $100,000 was for the residence, $400,000 for the two residential acres, and $50,000 per acre for the remaining 15.6 acres. That estimate was based on a comparison of the value of three other properties. Only one of the comparison properties had actually sold at the time. The other two properties had been on the market over one year with no offers; thus, only their list prices were shown. These properties were located 2, 4, and 15 miles from the Mallinckrodts' property. One was a 12–acre lot on a steep hillside with significant development costs, zoned for a single family residence; one was a 16–acre lot zoned for a single family residence; and one was an 81.88–acre lot with no access. The Mallinckrodt appraisal contained no explanation for the term "minimum market value."

¶5 The Board submitted its own appraisal of the property. The Board's appraiser compared the property with the sales prices of three residences and the sales prices of three unimproved lots. Each of the compari-

son residences was located within 8.5 blocks of the Mallinckrodts' home; each had actually sold during 1995 or 1996; and detailed price adjustments were made for each to account for differences between them and the Mallinckrodts' home. Each of the comparison lots was a vacant lot within 10.5 blocks of the Mallinckrodts' property; each had a similar topography, zoning, and view; each actually sold during 1995; and detailed price adjustments were made for each to reflect differences between them and the Mallinckrodts' unimproved land. Based on these comparisons, the Board's appraiser valued the Mallinckrodts' property, both the residence and the unimproved portion of the parcel, between $3,423,000 and $3,726,300. The appraiser also estimated the replacement cost of the property, i.e., the cost to replace the property less depreciation. By this method, the property was appraised at $3,208,700. The Board also presented evidence that the Mallinckrodts sold the 15.6 acres, the parcel that did not have the residence on it, in January 1997 for $3,200,000. This sale occurred approximately two years after the initial 1995 valuation, but the litigation over the ownership of the private access road was still pending at the time of sale.

¶6 The Commission held that the Mallinckrodts failed to establish that their property's fair market value was less than the Board's $3,180,000 valuation, and the Commission affirmed. The Mallinckrodts filed a writ of review in this Court.

 ¶7 The Commission's determination of the fair market value of real estate is a factual question. *See Nelson v. Board of Equalization,* 943 P.2d 1354, 1356 (Utah 1997). We do not reweigh the evidence on review. *See Questar Pipeline Co. v. Utah State Tax Comm'n,* 850 P.2d 1175, 1178 (Utah 1993). We grant the Commission's valuation deference and affirm the valuation if there is substantial evidence to support it and the Commission has applied correct standards. *See* Utah Code Ann. § 59–1–610(1)(a) (1996). To prove that the Commission's fair market valuation is not supported by substantial evidence, the Mallinckrodts had the obligation to

marshal all of the evidence supporting the findings and show that despite the supporting facts and in light of the conflicting evidence, the findings are not supported by substantial evidence. Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion. *Beaver County v. Utah State Tax Comm'n*, 916 P.2d 344, 355–56 (Utah 1996) (citations and internal quotations omitted); *see also Nelson*, 943 P.2d at 1356.

¶ 8 The Commission is required to value property at fair market value, *see* Utah Code Ann. § 59–2–103(1) (1996), which is defined as "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Id.* § 59–2–102(8); *see Schmidt v. Utah State Tax Comm'n*, 1999 UT 48, ¶ 9, 980 P.2d 690. The Commission typically uses three recognized approaches to determine fair market value: cost, income, and market. *See Schmidt*, 1999 UT 48, ¶ 9, 980 P.2d 690; *Beaver County*, 916 P.2d at 347.

■ ¶ 9 The Commission's fair market valuation of the Mallinckrodts' property is sustained by substantial evidence. The Board's signed appraisal contains estimates based on both cost and market value methods. Both methods support at least a $3,180,000 value. The homes and lots compared against the Mallinckrodts' property had each actually sold during 1995 or 1996, and detailed price adjustments were made for differences between properties. The properties were located near the Mallinckrodts' property. The residences compared were within 8.5 blocks, and the lots were within 10.5 blocks and had similar topography, zoning, and view.

■ ¶ 10 The Mallinckrodts' evidence of value is flawed. That evidence consists of an unsigned appraisal setting forth a current minimum market value, not fair market value, which is the required standard. The Mallinckrodts argue that their evidence of current minimum market value equates to fair market value because a certified apprais-

er made the valuation. That does not follow. Fair market value is statutorily defined as "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Utah Code Ann. § 59–2–102(8). Certainly a certified appraiser must be aware that the term "fair market value" is a legal term of art that provides the determinative standard in cases such as this. Whatever "current minimum market value" is, and neither the Mallinckrodts nor their appraiser has explained it, it does not appear to be equivalent to fair market value.

■ ¶ 11 Furthermore, the Mallinckrodts' method is flawed because it compares their property against the asserted values of three other properties, only one of which was an actual sale price. The two others had been on the market for over one year with no offers. Ordinarily the market value of a residence should be based on "prices at which comparable properties have been bought and sold." *Schmidt*, 1999 UT 48, ¶ 9, 980 P.2d 690. In addition, the properties themselves are not comparable to the Mallinckrodt property. Those properties were located between 2 and 15 miles from the Mallinckrodts' home; the acreage of the comparison properties varied from 12 to almost 82 acres; and some of the properties had topography and other features that varied considerably from the Mallinckrodts' property. Finally, the appraisal contains no explanation or analysis of how the "minimum value" was computed.

■ ¶ 12 The Mallinckrodts argue that the Commission's evidence is not "substantial," *see supra* ¶ 7, because it is based on a comparison with homes that do not lie on sizable, unimproved lots, as their home does. The argument is correct to a point. As this Court has often stated, "valuation is an art, not a science." *Alta Pac. Assocs., Ltd. v. Utah Tax Comm'n*, 931 P.2d 103, 119 (Utah 1997) (internal quotes omitted); *see Beaver County*, 916 P.2d at 355; *Utah Ass'n of Counties v. Utah Tax Comm'n*, 895 P.2d 819, 825 (Utah 1995). It is clear that the Mallinckrodts' property is unique, and any prop-

erty compared with it will differ in some respect. While the Board's appraisal compares properties that do not lie on sizable, unimproved lots, those differences are accounted for by adjustments in price based on the comparison of similar vacant lots.

¶ 13 Affirmed.

¶ 14 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN and Justice RUSSON concur in Justice STEWART's opinion.