*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2015 UT 66**

IN THE

SUPREME COURT OF THE STATE OF UTAH

———————

DECKER LAKE VENTURES, LLC C/O
MALLARD CREEK CAPITAL PARTNERS
*Appellant,*

*v.*

UTAH STATE TAX COMMISSION,
BOARD OF EQUALIZATION OF SALT LAKE COUNTY
*Respondents*

———————

No. 20130757
Filed, August 11, 2015

———————

Fifth District, Washington
The Honorable James L. Shumate
No. 11-2163

———————

Attorneys:
Samuel A. Lambert, Salt Lake City, for appellant

John C. McCarrey and Laron J. Lind, Salt Lake City, for appellee
Utah State Tax Commission

Sim Gill and Bradley C. Johnson, Salt Lake City, for appellee
Board of Equalization of Salt Lake County, State of Utah

———————

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE PARRISH,
and JUSTICE HIMONAS joined.

———————

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is an appeal from a decision of the Utah Tax Commission under Utah Code section 59-2-1006. In an equalization pro-

ceeding under this provision, the Commission is directed to "adjust property valuations to reflect a value equalized with the assessed value of other comparable properties" upon a determination that "the property that is the subject of the appeal deviates in value plus or minus 5% from the assessed value of comparable properties." UTAH CODE § 59-2-1006(5)(b). In this case the Commission rejected a request for equalization under this provision by Decker Lake Ventures, LLC. We affirm, finding no reversible error in the Commission's decision.

I

¶2    The property that is the subject of this appeal consists of a parcel of land (5.22 acres) and a building (41,296 square feet). Decker Lake Ventures leases the property, located on Decker Lake Drive in West Valley City, as office space. In 2010 the property was leased to a radio station.

¶3    The Salt Lake County Assessor's Office valued the property at $4,027,800 as of January 1, 2010. It used an income approach to valuation. That approach calculates a "lease rate" for the property, based in part on the property's "use type" (office, industrial, etc.), and then derives a market value from the income stream expected from lease payments. The County Assessor's valuation was sustained by the County Board of Equalization.

¶4    In proceedings before the Tax Commission, Decker Lake sought a reduction of the assessed valuation of the property. It did so under Utah Code section 59-2-1006, asserting that the assessed valuation of its property deviated "plus or minus 5% from the assessed value of comparable properties." UTAH CODE § 59-2-1006(5)(b).

¶5    To support its claim, Decker Lake presented evidence of the assessed value of properties that it deemed "comparable." Its data was presented in two spreadsheets. The first spreadsheet contained data on ninety land parcels, with dimensions of each parcel and an indication of their assessed value. The second set was for improvements (buildings). For these, Decker Lake presented a spreadsheet identifying the size, rental class, building type, etc. for each comparable improvement.

¶6 Decker Lake offered no expert analysis of the comparability of the properties identified in its two spreadsheets. In fact it offered no testimony of any sort. It simply presented the raw data in the spreadsheets, along with counsel's assertion that the data therein was relevant evidence of the "assessed value of comparable properties." *Id*.[1]

¶7 The County, for its part, presented expert testimony[2] in support of its assertion that its valuation of the Decker Lake property did not differ from the valuation of comparable properties. The County's valuation expert described the methodology of the County's valuation of the Decker Lake property, identified comparable properties in the neighborhood with similar assessed values, and highlighted deficiencies in the comparables proffered by Decker Lake. On the latter point, the County's witness emphasized that a property's "use type," a designation assigned by County assessors, has a significant effect on its value, and noted that only one of the eighteen improvement comparables identified by Decker Lake was classified as "office" use. And as to the ultimate question presented under the equalization statute, the County's valuation expert identified seven office improvements and three commercial land properties in the same neighborhood as the Decker Lake property, all of which were assessed at a rate similar to the Decker Lake property (but not included in Decker Lake's data set).

¶8 Instead of presenting its own valuation witness, Decker Lake chose only to cross-examine the County's expert. On cross-

---

[1] The two spreadsheets, moreover, gave no explicit indication of the degree of any overlap between them. On careful examination, however, it appears that fifteen of the eighteen improvements in the second spreadsheet were on parcels included in the first spreadsheet. *See infra* ¶ 27.

[2] Decker Lake challenges this characterization of the County's evidence, asserting that the County's witness was not an expert. Yet the County's witness proffered opinion testimony and Decker Lake raised no objection. So Decker Lake forfeited the right to object to the County's witness, and we refer to this evidence as *expert* testimony.

examination, the expert acknowledged that Decker Lake's property had been given a "commercial/other" use designation in 2011 after being designated as "office" use in 2010. He also conceded that there was overlap between the two spreadsheets submitted by Decker Lake—that although the land and improvement comparables were submitted separately, there was some overlap between the two data sets.

¶9 The Commission rejected Decker Lake's equalization claim. In so doing, it first expressed skepticism of Decker Lake's methodology of presenting "separate" comparables—in spreadsheets presenting land comparables in one data set and improvement comparables in a second. The Commission acknowledged that separating land and improvement comparables could be appropriate in some circumstances, as when land and improvement values are "determined separately with individual valuation methodologies." But it determined that this was not such a case, and thus determined that Decker Lake's approach was "questionable."

¶10 That said, the Commission proceeded to evaluate the Decker Lake spreadsheets anyway. And it concluded that this evidence was insufficient to sustain an equalization claim under Utah Code section 59-2-1006(5). First, the Commission concluded that the office properties in the same neighborhood as Decker Lake's property had land values consistent with the assessed value of the Decker Lake land. Second, it questioned the land values advanced by Decker Lake, reasoning that its valuations were based on "the assessed value of land that has different zoning, primarily industrial, which has a lower value than commercial zoned property." And finally, the commission concluded that the only two office comparables in Decker Lake's data set did "not appear to be out of line with that of other office buildings in the area." On these grounds, the Commission rejected Decker Lake's equalization appeal and sustained the County's assessment of its property.

¶11 Decker Lake then sought appellate review in this court. Our review of the commission's decision is governed by statute. UTAH CODE § 59-1-610. Under the cited provision, we review the

4

commission's legal determinations under a "correction of error standard" that yields "no deference" to the commission's analysis. *Id*. As to *mixed* determinations (involving the application of legal standards to a given set of facts), however, the statute is silent. So on those questions we review the commission's application of law to fact under our traditional framework. *See Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 23, 308 P.3d 461.

¶12 That framework treats some mixed questions as fact-like (meriting deferential review) and others as more law-like (meriting no deference). *Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 42, 308 P.3d 382. And it assigns the level of deference based on an assessment of "the nature of the issue and the marginal costs and benefits of a less deferential, more heavy-handed appellate touch." *Id*. Where the mixed question presented is fact-intensive and unlikely to result in the development of appellate precedent necessary to guide parties in future cases, for example, our review yields substantial deference to the commission. *See id*. In this case we apply a deferential standard, for reasons explained below. *See infra* ¶ 15.

## II

¶13 Decker Lake challenges the Tax Commission's decision on two fronts. It claims to find two legal errors in the commission's analysis. And it challenges a number of the commission's findings of fact. We reject both sets of arguments, and affirm.

## A

¶14 The two legal errors alleged by Decker Lake both go to the commission's assessment of what counts as "comparable properties" under Utah Code section 59-2-1006(5). The first alleged error goes to the significance of a property's use classification in the assessment of comparability. In Decker Lake's view, the Commission erred in concluding as a matter of law that properties are comparable only if they are designated under the same use classification. The second alleged error goes to the viability of an approach to valuation that presents separate valuations for the land and improvement components of a parcel of property. Decker Lake claims that the commission erred in concluding that the

"separate" presentation of these two components of value is impermissible as a matter of law.

¶15 Both arguments fail on the same basic ground: The Commission simply did not make the legal determinations that Decker Lake assails. It examined the evidence in the record and made a determination as to comparability—concluding that the County's comparables supported its position and that Decker Lake's evidence was insufficient to sustain its claim. But that is not a legal decision subject to review for correctness. *See Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 41, 308 P.3d 382 (explaining that questions of law involve abstract interpretations of legal principles). It is a mixed determination—involving the application of a legal standard to a unique set of facts. And it is a determination that merits substantial deference, as it is both "fact-intensive and unlikely to result in the development of appellate precedent necessary to guide parties in future cases." *See id.* ¶ 42.

¶16 The Commission's decision announces neither of the legal conclusions that Decker Lake challenges on appeal. First, the Commission did not "appl[y] a rule allowing comparison of only buildings with identical use-classification to the exclusion of all physical characteristics of the proffered comparable buildings," as Decker Lake contends. It simply determined that the evidence in the record sustained the County's reliance on the properties deemed comparable by its expert, and undermined the comparability of the properties identified by Decker Lake.

¶17 Granted, the Commission's determination of comparability hinged to some degree on the use classification assigned to the parties' proffered comparables. But nowhere did the Commission render a categorical conclusion that only identically classified properties can be comparable. It simply assessed the evidence in the record—in light of the only expert analysis presented (from the County). That expert had testified that use classification has an impact on valuation, and that a property's "lease rate" was dependent on its use designation as "office," "industrial," or residential.

¶18 We cannot fault the commission for relying on this testimony. Decker Lake, after all, proffered no testimony of its own—

expert or otherwise—to counter the County's evidence. So Decker Lake is in no position to question the County's premises on appeal. Having failed to proffer its own witness, Decker Lake can hardly fault the Commission for accepting the County's expert's assertion that use classifications affect property valuations, or insist that the Commission should have found instead that a property's physical attributes are more significant than its use classification.[3]

¶19 Decker Lake's second claim of legal error fails on similar grounds. The Commission nowhere announced a legal requirement that an equalization appellant advance evidence "compar[ing] land and improvements as if they were a single unit." It simply stated that it was "unaware of any appraisal principle that would allow for an improvement to be compared with other improvements, and then allow for comparisons of land based on different improvement properties." And it noted that it would be "difficult to make an equalization argument" without combined comparables. These statements convey skepticism of Decker Lake's appraisal methodology. But they render no conclusions of law. That is clear from the fact that the commission proceeded to consider Decker Lake's proffered land and improvement compa-

---

[3] The point is not that expert testimony is a required element of an equalization appeal. In a straightforward case involving residential property, for example, the question of comparability could likely be assessed purely on the basis of documentary evidence— e.g., a document identifying homes in the same neighborhood, and of about the same square footage, as the subject property. But this case is different. Here the comparability of the properties presented to the commission was a matter of some dispute. And the method of valuation was complex, involving both a future income stream and a separate assessment of land and improvement values. In this context, Decker Lake's failure to proffer testimony on the question of comparability is fatal to its appeal—not because such testimony is always required, but because the comparability question in this case was sufficiently complex to justify the tax commission's reliance on the only valuation testimony it had before it.

rables separately even after raising questions regarding the viability of its methodology.

¶20 Again, moreover, Decker Lake's appeal is hampered by its decision not to proffer any testimony of its own on the question of the appropriate valuation methodology in this case. Given the one-sided view that the Commission was presented with on that question, we cannot fault the Commission for relying on the County's expert opinion.

B

¶21 Decker Lake also alleges factual error in three sets of findings by the Commission: (1) that Decker Lake's property was zoned differently than its submitted comparables; (2) that Decker Lake submitted combined land and improvement values with respect to only one parcel; and (3) that Decker Lake requested a reduction in assessed value of its property to $2,400,396 and that the median and mean values of Decker Lake's improvement comparables were $32.57 and $33.42, respectively. We affirm on all three counts, finding substantial evidence in the record to support the second finding and concluding that any error in the first and third findings is harmless.

1

¶22 In conducting its comparability analysis, the Commission found that Decker Lake's spreadsheets identified "land that has a different zoning, primarily industrial, which has a lower value than commercial zoned property." This was error. As the County acknowledges in its briefing, the Decker Lake property was zoned the same (M—Manufacturing) as the property in the proffered comparables.

¶23 That is not the end of our analysis, however. The mere identification of error does not alone sustain a judgment of reversal. In an administrative appeal, like most any other, we must also consider the question of prejudice. *See* UTAH CODE § 63G-4-403(4) (relief is available in an administrative appeal "only if" a party is "substantially prejudiced"). Thus, notwithstanding an error by the commission, we may reverse only if the agency's error was "not harmless." *Emp'rs Reinsurance Fund v. Labor Comm'n*, 2012 UT 76, ¶ 8, 289 P.3d 572; *see also T-Mobile USA, Inc. v. Utah State Tax*

*Comm'n*, 2011 UT 28, ¶ 14–15, 254 P.3d 752 (applying the harmless error standard in Utah Code section 63G-4-403(4) to review of tax commission decision).

¶24 We affirm under this standard. The Commission was mistaken in repudiating Decker Lake's comparables on the basis of a difference in *zoning* classification. But there was ample alternative evidence to support its decision rejecting Decker Lake's comparables. The principal alternative basis was in the above-noted evidence of differences in *use* classifications—that the Decker Lake property was designated for "office" use,[4] while its proffered comparables were classified as "industrial" or other such uses. *See supra* ¶ 17. The County's expert attested to the significance of such classifications in assessing the appropriate "lease rate" for a particular parcel of property. And again Decker Lake proffered no evidence countering that view. Thus, on this record, we have no trouble concluding that the Commission would have ruled against Decker Lake even absent its factual error regarding zoning classification.

¶25 We affirm on that basis. All else being equal, Decker Lake has a point that "neighboring land with the same zoning is comparable land." But it does not follow that identically zoned property is always comparable. The expert testimony presented by the County asserted that *use* was the driving consideration in valuation, and thus in comparability. Absent any rebuttal by Decker Lake—e.g., a witness asserting that *zoning* matters more than *use*—there is no basis in the record for a determination that the Commission's error as to zoning would have made any difference. That means that the Commission's error was harmless on this record.

2

---

[4] Decker Lake also seeks to challenge this point, asserting that the County's use classification for its property ("office") was error. But this challenge fails for the reason articulated repeatedly herein: The County's expert analysis was all the commission had on this issue, and Decker Lake is in no position to challenge that analysis given its failure to proffer any contrary testimony.

¶26 In assessing Decker Lake's evidence of comparable property combining values of both land and improvements, the Commission found that "the Taxpayer's representative's analyses included both the land and improvements for only one parcel." As to that parcel, the Commission noted that the property was "assessed at an overall value of $93.55 per square foot, while the subject is assessed at an overall value of $97.53 per square foot." And in support of these findings, the Commission cited "Exhibit R-8."

¶27 Decker Lake claims error in these findings. It asserts that it presented data on multiple parcels that appeared on both spreadsheets (with overlapping land and improvement data for the same parcel). And it accordingly contends that the Commission erred in finding that Decker Lake's "analyses included both the land and improvements for only one parcel."

¶28 We disagree. On its face, the Commission's finding is not addressed to *the degree of factual overlap* between Decker Lake's two spreadsheets. It is focused on the "Taxpayer's representative's *analyses*." And in light of the evidence considered by the Commission of relevance to this finding (Exhibit R-8), the Commission's determination that the "analyses" in the record focused on only one parcel appearing on both spreadsheets is correct (or perhaps, strictly read, in error *in favor of Decker Lake*).

¶29 The "analyses" mentioned in the Commission's findings appear in Exhibit R-8. That is clear from the finding's sole reference to the record—to "Exhibit R-8," a side-by-side comparison of Decker Lake's property and one of the comparables. That document, moreover, mirrors the Commission's findings precisely— indicating that the subject property was valued at $97.53 and the comparable at $93.55. And on the face of Exhibit R-8, there is no question that there is only one parcel subject to any analysis. In that sense the Commission's finding is correct.

¶30 In another sense, however, there is an error in the commission's findings. Strictly speaking, there were *no* "analyses" *presented by Decker Lake's "representatives"* at the hearing—as its only representative was its attorney (it proffered no witnesses), and counsel presented no independent analysis of the data (nor could counsel have done so, as counsel was in no position to testify). So

the Commission's reference to "the Taxpayer's representative's analyses" appears to be a mistake. Yet that mistake is in Decker Lake's favor, so it is hardly a basis for reversal.

3

¶31 The last set of "findings" challenged by Decker Lake goes to the reduced valuation it requested in the Tax Commission and the median and mean values of the improvement comparables it presented. On the first point, Decker Lake asserts that the Commission indicated that it had requested a reduced valuation of $2,400,396, but in fact the number it submitted was $2,270,541. On the latter, Decker Lake contends that the Commission stated that the median and mean values of its improvement comparables were $32.57 and $33.42 respectively, when the actual values were $30.27 and $30.81.

¶32 These may have been errors, but they are matters of no consequence to the Commission's decision before us on review. Nothing in the Commission's decision suggests that the cited numbers had any effect on Decker Lake's equalization appeal. Indeed, Decker Lake makes no such argument. It simply asks that we correct the Commission's errors to aid its computations on remand. Because we find no basis for a remand, we reject this argument and dismiss any error in these computations as harmless.