2021 UT App 4

## THE UTAH COURT OF APPEALS

PATIENCE LLC,
Petitioner,

*v.*

SALT LAKE COUNTY BOARD OF EQUALIZATION AND
STATE TAX COMMISSION,
Respondents.

Opinion
No. 20190623-CA
Filed January 14, 2021

Original Proceeding in this Court

Jaryl L. Rencher and Michael J. Collins, Attorneys
for Petitioner

Simarjit S. Gill, Timothy A. Bodily, and LaShel Shaw,
Attorneys for Respondent Salt Lake County
Board of Equalization

Sean D. Reyes, Laron J. Lind, and Stanford E. Purser,
Attorneys for Respondent State Tax Commission

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1      Patience LLC seeks review of a final decision of the State Tax Commission denying Patience an adjustment of the fair market valuation of its property. The Salt Lake County Assessor's Office (the County) valued the subject property at $885,890. Patience appealed the County's assessment, arguing for a lower valuation based on the sales prices and valuations of properties it believed were comparable. After a formal hearing, the Commission sustained the original valuation. Upon review, we decline to disturb the Commission's decision.

BACKGROUND

¶2      In 2017, a local law firm was in search of new downtown office space after a recent downsize. In addition to needing less space, the firm's existing office lease was expiring, and a renewal would mean an increase in rent.

¶3      A principal of the law firm hired a commercial real estate agent to help the firm find a suitable property. According to the agent, "there were not a lot of listings at the time . . . near downtown that were suitable," but the firm found one that met its needs—the subject property located at 460–462 South 400 East in Salt Lake City. On May 31, 2017, Patience, a related entity, purchased the property for the law firm's use. It paid $1,242,824.[1]

¶4      The property is 0.23 acres of land improved with a building originally constructed as a residence in 1905. The residence was subsequently converted to office space, a remodel known as an "office conversion." The County considered the building to "be of good grade and in good condition." County records showed that it has 4,484 square feet above grade area, 1,394 square feet of office area finished in the basement, and 639 square feet of basement storage area. The finished office area on the County's records totaled 5,878 square feet.

¶5      With a lien date of January 1, 2017, the County valued the property for tax purposes at $885,890. Unhappy with this valuation, Patience appealed the assessment to the Salt Lake County Board of Equalization (the Board). Patience submitted sales data of four other properties that it deemed comparable and argued for a valuation of $550,000. The Board was not persuaded, finding that the properties Patience identified were different "in size, location, year built and use type when compared to the subject" property and "would require

---

1. The property had sold for $727,500 in 2011.

significant adjustments to" the sales data to draw any reliable comparisons. The Board thus concluded that the evidence Patience submitted was "insufficient to provide a sound evidentiary basis for an alternative value" and sustained the original valuation.

¶6    Patience appealed the Board's determination to the Commission, again arguing for a valuation of $550,000 and offering two primary reasons why it believed the County's valuation of $885,890 was too high.

¶7    First, Patience contended that the County overvalued the property based on a faulty assessment of its fair market value. In addition to claiming that the County used the wrong square footage, Patience urged the Commission to disregard the 2017 transaction in which it had paid $1.2 million for the property, and it asked the Commission to instead rely on the sales data of three other properties that it claimed were comparable. Patience argued that its purchase price was artificially high because it purchased the property under duress. Patience also argued that the value of the property had been diminished by issues arising out of the displacement of the homeless population from other areas in the city as part of Operation Rio Grande.[2] Finally, Patience provided the sales data of three other properties in the downtown area to support a lower market value for the subject property. The sale prices of the other three properties were substantially lower than the price Patience paid for the subject property.

¶8    Second, Patience argued for an equalization adjustment to the County's valuation of the property, claiming that the

---

2. Operation Rio Grande was an effort launched in August 2017 to address homelessness in the Salt Lake City area. *See Operation Rio Grande*, https://operationriogrande.utah.gov/ [https ://perma.cc/EM8W-VBTK].

valuation deviated more than 5% from the assessed value of comparable properties. Patience identified seven different properties that it believed were comparable to the subject property. Each assessed value of the other properties deviated more than 5% from the subject property's valuation.

¶9 At the hearing before the Commission, three witnesses testified for Patience. The first, a commercial real estate agent (Realtor), testified that she believed the seven properties Patience identified in support of its equalization argument were "sufficiently comparable" to the subject property. She also opined that the County's valuation of the subject property "[s]eems to be very high."

¶10 The second witness, a law firm employee, testified that beginning about August 2017, employees "would come to work in the morning and find individuals camping on their property with tents or tarps and sleeping on the back porch of the building." She explained that they "started to see almost daily problems with homeless individuals and their possessions on the property."

¶11 The third witness for Patience, the law firm's office manager, testified that the firm had to find new office space "in a quick manner" because the firm's rent was going to increase if it renewed the lease in its prior location.

¶12 The Board, for its part, supported its position with the expert testimony of a real estate appraiser (Appraiser).[3]

---

3. Patience complains that Appraiser was not qualified as an expert. But Patience did not object to Appraiser's qualifications or to her providing expert opinion testimony before the Commission. Thus, Patience has forfeited its objection to Appraiser as an expert witness. *See Decker Lake Ventures, LLC v. Utah State Tax Comm'n*, 2015 UT 66, ¶ 7 n.2, 356 P.3d 1243

(continued…)

Appraiser testified that the properties identified by Patience were not truly comparable to the subject property. A few of the properties were office conversions, which Appraiser explained are assessed at a higher value because buyers are "attract[ed] to older buildings," "[t]hey tend to be more unique," and they "tend to be very well constructed." The Board further argued that the properties Patience identified were not comparable because they were in poorer condition and of a lower grade than the subject property.

¶13 The Board also offered nine comparison properties of its own to rebut Patience's contentions that the original valuation was too high and that it should be equalized to a lower value. The comparables the Board submitted had valuations "right in line" with the property's valuation. On cross-examination, Appraiser conceded that two of the Board's comparables contained inaccurate basement square footage but had accurate above-grade square footage.

¶14 After taking the matter under advisement, the Commission issued a written decision sustaining the County's original valuation of $885,890. Ultimately, the Commission found that the properties Patience identified were not "actually comparable" to the subject property because they were either "not in as good of condition," "were considered to be of a lower grade," or were not office conversions. Additionally, the Commission did not credit Patience's claim that the subject property's purchase price exceeded its fair market value, stating that "insufficient evidence of duress was offered to support the argument that a law firm would pay twice the market value

_____

(…continued)
(concluding that the taxpayer forfeited its right to challenge the County's characterization of its witness as an expert where the taxpayer did not object to the witness's proffered opinion testimony below).

rather than enter into a new lease or find an office building to purchase in a different location." The Commission also noted that the homeless activity on and around the property "appears to be a post lien date issue" and thus could not affect the assessment of fair market value from an earlier time.

¶15 Patience sought reconsideration of the Commission's decision, arguing that there was no support for its finding that office conversion properties are valued at higher rates and that Patience "provided much more accurate comparable properties" than the Board provided. Patience also submitted "newly discovered evidence" of seven other allegedly comparable properties, all of which were office conversions.

¶16 The Commission denied Patience's motion. The Commission was unpersuaded by Patience's arguments and declined to consider the additional properties because Patience "should have submitted [them] in the first place."[4]

---

4. Patience refers to the seven additional properties in its opening brief, and it relied on them in support of its argument on review. This is improper. The Commission rejected the evidence as untimely and Patience did not challenge that determination in its opening brief. *Pilcher v. State*, 663 P.2d 450, 453 (Utah 1983) ("Matters not admitted in evidence before the trier of fact will not be considered [on appeal]."). And while Patience contends in its reply brief that the Commission "had a duty to consider the comparables in the motion for reconsideration," this argument is both untimely and unsupported by authority and reasoned analysis. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 ("Generally, issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court."); Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶17  On review, Patience largely repeats the arguments it made before the Commission. First, Patience contends that the Commission erred in sustaining the subject property's assessed value based on market value evidence. "The Commission's determination of the fair market value of real estate is a factual question." *Mallinckrodt v. Salt Lake County*, 1999 UT 66, ¶ 7, 983 P.2d 566. "We grant the Commission's valuation deference and affirm the valuation if there is substantial evidence to support it and the Commission has applied correct standards." *Id.*; *see also* Utah Code Ann. § 59-1-610(1)(a) (LexisNexis 2018). "Moreover, we conduct our review in light of the burdens the taxpayer carries before the Commission, where the protesting taxpayer is required not only to show substantial error or impropriety in the assessment, but also to provide a sound evidentiary basis upon which the Commission could adopt a lower valuation." *Utah Ry. Co. v. Utah State Tax Comm'n*, 2000 UT 49, ¶ 6, 5 P.3d 652 (cleaned up).

¶18  Second, Patience contends that the Commission erred by not adjusting the valuation of the property "to reflect a value equalized with the assessed value of other comparable properties." This is a mixed determination, requiring "the application of a legal standard to a unique set of facts." *Decker Lake Ventures, LLC v. Utah State Tax Comm'n*, 2015 UT 66, ¶ 15, 356 P.3d 1243. As such, the Commission's determination "merits substantial deference, as it is both fact-intensive and unlikely to result in the development of appellate precedent necessary to guide parties in future cases." *Id.* (cleaned up).

---

(…continued)
citations to legal authority and the record, why the party should prevail on appeal.").

ANALYSIS

I. Fair Market Value

¶19    "The Commission is required to value property at fair market value." *Mallinckrodt v. Salt Lake County*, 1999 UT 66, ¶ 8, 983 P.2d 566; *see also* Utah Code Ann. § 59-2-103(1) (LexisNexis 2018). Fair market value is "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Utah Code Ann. § 59-2-102(13) (LexisNexis Supp. 2016).

¶20    The County assessed the subject property's fair market value for tax purposes at $885,890. Patience contends that the Commission erred in sustaining the County's assessment, claiming that the property's $1.2 million purchase price, "or anywhere near that level, does not represent [its] fair market value." Patience argues, based on the sales data for three other properties, that the Commission instead should have adopted a valuation of $651,908.78. We disagree.

¶21    First, we owe the Commission's fair market valuation deference, and Patience has not shown that there is a lack of substantial evidence to support it. *See Mallinckrodt*, 1999 UT 66, ¶ 7. Before the Commission, Patience conceded that it purchased the subject property in May 2017 for more than $1.2 million—nearly $350,000 more than the assessed value. Still, it argued that the Commission should not have given weight to that figure, claiming that it does not accurately represent the property's fair market value.

¶22    Primarily, Patience argued that the purchase was made under "emergency circumstances" and that it was "forced to overpay nearly twice the fair market value of the property." In other words, Patience argued that the price it paid exceeded fair market value by more than half a million dollars because it was

under compulsion to buy. We discern no error in the Commission's rejection of this claim.

¶23 The Commission found that while there was some testimony that Patience "was highly motivated" to find a property, there was "insufficient evidence of duress" to support Patience's argument that it, or its affiliated law firm, "would pay twice the market value rather than enter into a new lease or find an office building to purchase in a different location." The record supports this finding. The law firm's office manager testified that the firm had to find new office space "in a quick manner" because its rent was going to increase, but she could not speak to the terms of the lease or how much more the firm would have to pay. Similarly, Realtor testified that there were not many suitable listings, but she offered no support for Patience's claim that its options were so limited that it "was forced" to pay twice the property's fair market value. Further, Patience has shown no error in the Commission's determination that limited inventory is a factor that increases a property's fair market value, "causing a willing buyer to pay more for location or style of property than would be measurable by mere price per square foot or some other nominal measure."[5]

¶24 Next, Patience argued that the valuation was inflated because the property was distressed due to the displacement of the city's homeless population. The Commission rejected this argument because the issue "was not known or knowable on the

---

5. Below and on review, Patience does not distinguish between itself and the law firm for purposes of describing this alleged duress. And we have doubts about whether Patience, an entity separate from the law firm, could establish duress based on the needs of the law firm. But we need not resolve these doubts because Patience has not shown sufficient evidence of duress by either entity to support its claim that it overpaid for the property.

lien date of January 1, 2017, or on the purchase date in May 2017," and thus it could not affect the fair market valuation. Again, Patience has not shown error in the Commission's finding. Patience concedes that Operation Rio Grande, which caused the displacement, "was launched on August 14, 2017." And the law firm's employee confirmed that when the firm first moved in, she did not notice issues with the homeless population, but that she "started noticing problems" only in the "late summer, early fall 2017"—months after the valuation date. Thus, the Commission did not err in finding that these issues occurring months after the lien date did not affect its fair market valuation.

¶25    Patience also argued that its three comparable sales demonstrated that the County's assessed value does not reflect the subject property's fair market value. Patience claims that the Commission erred in not giving greater weight to these properties, arguing that all three are commercial properties and have similar square footage as the subject property. But in making its argument, Patience overlooks the Commission's stated rationale for dismissing the properties as not truly comparable. The Commission explained that one of the properties was an office condominium, "which is very dissimilar" to the office conversion property Patience owned. And the two office conversion properties "were not in as good of condition as the subject property." Because Patience has not engaged with the Commission's reasoning, Patience has not persuaded us that the Commission erred. *See Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 55, 473 P.3d 624 (rejecting an argument because the parties asserting error "did not address the district court's reasoning and explain why it was wrong in their opening brief").[6]

---

6. Patience also contends that the County's fair market valuation was inflated based on an alleged miscalculation of the property's

(continued…)

¶26 Finally, Patience's challenge to the Commission's fair market valuation also fails for the alternative reason that Patience has not demonstrated that it provided a sound evidentiary basis for the adoption of its lower valuation. *Fraughton v. Utah State Tax Comm'n*, 2019 UT App 6, ¶ 16, 438 P.3d 961 ("In addition to showing that the Commission made an error in arriving at the value of the Property, [the taxpayer] must also provide a sound evidentiary basis for the Commission to adopt a lower value."). Before this court, Patience argues that the Commission should have adopted a valuation of $651,908.78. But Patience did not advocate for that valuation before the Board or the Commission. Instead, Patience argued that the three comparables it identified supported a fair market valuation of $550,000.[7] Having advocated for one valuation before the

---

(…continued)

square footage. Patience claims that the County "calculated the property as 6,571 square feet, when it was purchased with rentable square footage of 5,842 square feet." Patience does not cite any evidence in the record to support its claim about the County's calculation, and it is contrary to the Commission's findings that the finished office area on the County's records totaled 5,878 square feet. And while the Commission noted the difference of 36 square feet between the two figures, it explained that Patience's evidence to support its calculation did not show how the size was calculated. Under these circumstances, Patience has not demonstrated that the difference in square footage resulted in a "substantial error" in the County's valuation. *See Utah Ry. Co. v. Utah State Tax Comm'n*, 2000 UT 49, ¶ 6, 5 P.3d 652 (cleaned up).

7. In truth, Patience proposed that the Commission adopt a fair market valuation of less than $500,000. However, the Commission's findings state that Patience "requested a reduction to $550,000." Because the Commission's findings on this point are unchallenged, we consider $550,000 to be the

(continued…)

Commission, Patience cannot demonstrate on review that the Commission erred in not adopting an entirely different valuation. *Cf. Oseguera v. State*, 2014 UT 31, ¶ 10, 332 P.3d 963 ("[A] party that makes an objection based on one ground does not preserve any alternative grounds for objection for appeal.").

¶27   In sum, we conclude that there was substantial evidence to support the Commission's fair market value determination. The purchase price of the property and the comparable properties the Board identified support the County's original assessment. Further, we discern no error in the Commission's rejection of Patience's claims that it purchased the property under duress and that the property's fair market value was negatively affected by the displacement of the city's homeless population. Patience's challenge also fails because it did not provide a sound evidentiary basis for the Commission to adopt a lower valuation of $550,000.

## II. Equalization

¶28   The Utah Constitution states that "all tangible property in the State . . . shall be . . . taxed at a uniform and equal rate" in proportion to its fair market value. Utah Const. art. XIII, § 2, cl. 1. Consistent with this constitutional mandate, a property owner may seek adjustment of a property tax evaluation if the assessment "stands apart from a group of undervalued comparable properties." *See Mountain Ranch Estates v. Utah State Tax Comm'n*, 2004 UT 86, ¶ 15, 100 P.3d 1206. This is a process known as equalization.

¶29   The Commission must adjust a property valuation "to reflect a value equalized with the assessed value of other

---

(…continued)
relevant figure and note that the difference is immaterial to our decision.

comparable properties" if two conditions are met: (1) a taxpayer raises the issue of equalization, and (2) "the commission determines that the property that is the subject of the appeal deviates in value plus or minus 5% from the assessed value of comparable properties." *See* Utah Code Ann. § 59-2-1006(5) (LexisNexis 2018). A taxpayer seeking equalization bears the burden of identifying comparable properties that deviate more than 5% from the valuation of the property. *See Mountain Ranch Estates*, 2004 UT 86, ¶ 10; *see also First Nat'l Bank of Nephi v. Christensen*, 118 P. 778, 781 (Utah 1911) ("The burden to show the inequality was on the [taxpayer].").

¶30 Patience contends that the Commission erred in not reducing its property tax valuation to $541,368.79 through equalization. Patience argues that the Commission "erroneously interpreted comparable properties to mean that any comparable property . . . had to be an office conversion" and thus it "completely ignored" the seven comparison properties Patience identified with valuations that deviated by more than 5% from the subject property's assessed value. We are not persuaded.

¶31 Contrary to Patience's claims, the Commission did not categorically conclude that comparable properties had to be office conversions, nor did it ignore the properties Patience identified. True, the Commission noted that most of Patience's comparables were office buildings or office condominiums, not office conversions. But that categorization was not dispositive. The Commission evaluated the other properties and found that they were not "actually comparable" because they all were in poorer condition than the subject property and most were of a relatively lower construction grade.

¶32 Further, we cannot fault the Commission for finding that Patience's properties were not comparable where the Board rebutted the evidence by identifying other office conversion properties in the same neighborhood as the subject property with similar valuations. Appraiser testified that there is a

disparity between the value of office conversions and traditional offices because there is an "attraction to older buildings," which "tend to be more unique," "tend to be very well constructed," and will usually have a longer economic life remaining. And Realtor agreed that office conversions are "different types of buildings" than other office buildings and "probably sell for a different price per square foot." Thus, the Commission accepted the experts' assertions that the classification of buildings affects property valuations, and on that basis it determined that Patience had not met its burden of demonstrating that the subject property deviates in value by more than 5% from the assessed value of comparable properties. This is a mixed determination that merits substantial deference, and on this record we decline to disturb the Commission's determination. *See Decker Lake Ventures, LLC v. Utah State Tax Comm'n*, 2015 UT 66, ¶ 15, 356 P.3d 1243.


CONCLUSION

¶33 The Commission did not err in affirming the assessed fair market value of the subject property because Patience did not show a substantial error in the valuation or provide a sound evidentiary basis upon which the Commission could adopt its lower valuation. Nor did the Commission err in rejecting Patience's request to reduce the subject property's valuation based on equalization based on its determination that Patience did not identify comparable properties with assessed values that deviated more than 5% from the subject property's valuation. We therefore decline to disturb the Commission's decision.