**In the Matter of the ADOPTION OF INFANT ANONYMOUS.**

No. 870415–CA.

Court of Appeals of Utah.

Sept. 1, 1988.

David S. Dolowitz (argued), Salt Lake City, for appellant.

Richard B. Johnson (argued), Orem, for respondent.

Before JACKSON, GARFF and BENCH, JJ.

## OPINION

JACKSON, Judge:

Appellants, the prospective adoptive parents of Infant Anonymous, appeal from a December 1987 district court judgment entered by Judge Richard Moffat which (1) allowed the natural mother of Infant Anonymous to revoke her consent to adoption and (2) ordered the custody of the child returned to her. Because there is insufficient evidence of any permissible ground for revocation of her original consent to the adoption, we vacate Judge Moffat's judgment and order.

The twenty-one-year-old natural mother of Infant Anonymous contacted the Utah Women's Health Center three months before the birth of her illegitimate child and was counseled about her decision to place the child for adoption. On June 24, 1987, thirty hours after the normal childbirth, she appeared before Judge Michael Murphy. Asserting it was her own free and uncoerced decision to give up the child, she explained she was relinquishing her parental rights and consenting to the adoption because she could not financially support Infant Anonymous. When specifically questioned by Judge Murphy, she stated the pain medication she was taking for her stitches did not interfere with her ability to know and understand what she was doing. She also acknowledged having read the written consent to adoption, which she then executed before the court. Paragraph 4 of that document provides:

I hereby relinquish all of my parental rights which exist to and with Infant Anonymous, a minor, born June 23, 1987, at Holy Cross Hospital, Salt Lake County, Utah, herewith affirming that I am the natural mother of the child; and I expressly consent to the adoption of the child by persons appearing before the Court, with full knowledge that by doing so I forfeit each and every right which might otherwise exist with reference to the custody and parental relationship of the child.

Judge Murphy issued an order the same day, granting temporary custody of the child to appellants during the pendency of their petition for adoption of Infant Anonymous.

A few days after signing the consent, the natural mother disclosed her pregnancy, the child's birth, and the planned adoption to her own mother, apparently for the first time. She then contacted staff of the Utah Women's Health Center seeking to revoke her consent. On July 22 she filed a motion to set aside both her consent to the adoption and Judge Murphy's order granting appellants temporary custody of Infant Anonymous.

In her supporting affidavit, the natural mother stated that pain medication she was taking when she appeared before Judge Murphy had, together with the stress of childbirth, left her "without sufficient will and strength to properly evaluate" whether to give her child up for adoption. She also asserted, "I was informed and believed that the Decree of Adoption did not become final for six months and that I had that period of time in which some action could be taken."

Appellants opposed the natural mother's motion and submitted two affidavits controverting her statements. In the first affidavit, her obstetrician opined that the Tylenol #3 administered after the delivery would not have adversely affected her ability to make an informed and knowing decision on June 24, 1987, respecting the relinquishment for adoption. The doctor also declared that, up to and after the delivery of Infant Anonymous, the natural mother had indicated no hesitation about her stated intention to place the child for adoption.

In the second affidavit, the counselor from the women's clinic described the twelve and one-half hours of prenatal counseling provided to the natural mother. The counselor stated that the natural mother had continually and unconditionally affirmed her desire to place her child for adoption because she was unmarried and without means of support. The counselor also recounted an early June meeting, set

up to discuss a private adoption of Infant Anonymous, that she attended with the natural mother and the attorney representing the appellants. At that meeting, the attorney advised the natural mother that she would have to appear before a judge and sign a written affidavit of consent to the adoption, after which "her rights to the infant would be terminated, and she could not thereafter change her mind and obtain custody of the child." She was also told that the attorney represented the appellants and that she should seek independent legal counsel to advise her and answer any legal questions. The counselor stated that, after this meeting, she again discussed with the natural mother the finality of her decision to relinquish her child for adoption. According to the counselor, the natural mother expressed no reservations about her relinquishment in their two-hour luncheon conversation after the appearance before Judge Murphy to execute the written consent. However, several days later the natural mother called the counselor and said she had changed her mind about the consent to adoption.

The natural mother's motion to withdraw her consent to the adoption was considered and ruled on by Judge Moffat, not Judge Murphy, with no objection from the parties. The parties submitted the motion for decision after oral arguments by counsel. No evidentiary hearing was requested or held.

In a September 1 signed minute entry explaining his decision, Judge Moffat found that the natural mother did not knowingly consent to the unconditional release of her parental rights. He based this determination on the following statement by Judge Murphy to the natural mother when she appeared before him on June 24: "Do you understand—for want of a better word— the finality of this? That *if it goes forward,* that you relinquish all parental rights forever." According to Judge Moffat, these emphasized words implied that the natural mother's consent was not final, that the proceedings would first have to "go forward," and that, since she was told

the adoption decree would not be final for six months, she "took [Judge Murphy's statement] to mean that she could withdraw her consent at any time during that six month period." [1] Judge Moffat also stated he was impressed by the fact that the natural mother had not consulted with members of her own family, including her own mother, until after the birth of the child. He granted the natural mother's motion to withdraw her consent to adoption and ordered appellants to return the child to her custody. That order was stayed by order of this court after appellants filed their notice of appeal.

■ Appellants challenge Judge Moffat's written finding that the natural mother's oral and written consent to adoption before Judge Murphy was not knowingly given because she was not clearly apprised of the finality of signing the written consent. Normally we would review this determination by the factfinder under the standard set forth in Utah R.Civ.P. 52(a), giving great deference to the trial judge's ability to assess the credibility of witnesses and setting aside the finding only if clearly erroneous. However, because no evidentiary hearing was held, Judge Moffat had before him only the affidavits of the natural mother, the counselor, and the obstetrician, described above, the transcript of the June 24 appearance before Judge Murphy, and the natural mother's written consent to adoption executed that day. Because the trial court's finding was based solely on these written materials and involved no assessment of witness credibility or competency, this court is in as good a position as the trial court to examine the evidence *de novo* and determine the facts. *Bench v. Bechtel Civil & Minerals, Inc.,* 758 P.2d 460, 461 (Ct.App.1988). *See Brown v. Brown,* 744 P.2d 333, 336–37 & n. 1 (Utah App.1987) (Orme, J., dissenting); *In re Request of Rosier,* 105 Wash.2d 606, 717 P.2d 1353, 1359 (1986).

1. Judge Moffat apparently rejected the natural mother's contention that her pain medication and the stress of childbirth had interfered with her ability to evaluate properly whether to relinquish Infant Anonymous on June 24.

■ Under Utah Code Ann. § 78–30–8 (1987), a natural parent whose consent to adoption of a child is necessary must give that consent before a district judge. This requirement allows the court to see that the relinquishing parent is informed and understands the effect of his or her voluntary consent to adoption. *Taylor v. Waddoups*, 121 Utah 279, 241 P.2d 157 (1952). *See In re S.*, 572 P.2d 1370, 1373 (Utah 1977). Because of the need for finality in obtaining the necessary written consent to adoption of a child, there is a presumption of regularity when such a consent is executed before and accepted by a judge. *See In re S.*, 572 P.2d at 1373; *In re Adoption of K.*, 24 Utah 2d 59, 465 P.2d 541, 543 (1970). The consenting party can overcome this presumption only by showing that the consent to adoption, with the accompanying relinquishment of all parental rights, was not entered into voluntarily but was induced through duress, undue influence, or under some misrepresentation or deception, or other grounds which would justify release from the obligations of any contract. *In re S.*, 572 P.2d at 1374; *In re Adoption of F.*, 26 Utah 2d 255, 259–60, 488 P.2d 130, 132–33 (1971).

■ Against this backdrop of relevant principles, the facts alleged in the natural mother's July 22 affidavit are totally insufficient to establish one of the permissible grounds for revocation of a consent to adoption previously executed before the court. She did not allege duress, undue influence or deception by the appellants, their counsel, her counselor or her doctor. She only asserted: "I was informed and believed that the Decree of Adoption did not become final for six months and that I had that period of time in which some action could be taken." Although this could be construed as an attempted allegation of misrepresentation or unilateral mistake, she did not identify the date or source of her information and belief that she could take some unspecified action during the pendency of the adoption proceeding.[2] She did not even directly assert that, on June 24, 1987, she believed, however mistakenly, that she could revoke her consent to the adoption during the six-month period.

■ Although in his ruling Judge Moffat linked the natural mother's ostensibly mistaken belief to one statement by Judge Murphy, quoted above, at the June 24 court appearance, the natural mother made no such allegation in her affidavit in support of her motion to set aside her consent. This suggestion—that Judge Murphy had implied her relinquishment of parental rights was not final until the adoption was final—was made and argued by the natural mother's counsel at oral argument on the motion, but his comments on and characterizations of the "facts" are not evidence properly considered by the court.

■ Even if the natural mother had asserted in her affidavit that she was misled by Judge Murphy's one isolated comment, the evidence before Judge Moffat, when viewed as a whole, compels the conclusion that the natural mother knew and understood on June 24, 1987, that her written consent to adoption was final. The language of the written consent itself is unequivocal; that of her affidavit is vague and unspecific. Furthermore, the natural mother did not controvert the statements by her counselor that they had discussed the finality of the written consent and that the same had been explicitly explained to her by appellants' attorney at the June meeting.

■ Although it appears that the natural mother changed her mind about relinquishing Infant Anonymous after telling her own mother about the pregnancy for the first time, the fact that this adult woman chose not to consult with members of her own family until after execution of the consent to adoption is not determinative of whether that consent was knowing and voluntary.

On the evidence presented to the trial court, we find that the natural mother's

---

2. There is no mention of any six-month period (before the adoption could be final) in the transcript of the natural mother's appearance before Judge Murphy on June 24 or in her written consent to the adoption.

consent to the adoption of Infant Anonymous was voluntarily and knowingly given on June 24, 1987. There is insufficient evidence to establish any permissible ground for withdrawal of that consent.

The judgment and order of Judge Moffat, dated December 3, 1987, are vacated. The case is remanded to the district court for further expeditious proceedings on appellants' petition for adoption of Infant Anonymous. Costs to appellants.

GARFF and BENCH, JJ., concur.