*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 52**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Adoption of B.B.,
a person under eighteen years of age

S.A.S.,
*Appellant*,

*v.*

K.H.B. and K.R.B.,
*Appellees*.

No. 20180239
Heard November 12, 2019
Filed July 23, 2020

On Certification from the Court of Appeals

Fourth District, Provo
The Honorable James Brady
No. 162400166

Attorneys:

Mark L. Shurtleff, Sandy, for appellant

K. Paul MacArthur, Stephanie L. O'Brien, Provo, for appellees

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is a biological father's appeal from the entry of an adoption decree. The father (S.A.S.) initially objected to the adoption of his biological daughter (B.B.) but eventually consented and signed a relinquishment of parental rights. He later changed his mind and filed a motion to revoke his relinquishment, asserting that he had signed it under duress. The district court denied the motion on the

ground that S.A.S. had failed to identify an evidentiary basis for his bare allegation that his relinquishment was involuntary. It also rejected his contentions that he had a due process right to have his relinquishment invalidated by the adoptive parents' failure to notify him of his statutory right to receive counseling in connection with his relinquishment, and that he had an equal protection right to the same strict relinquishment requirements applicable to a birth mother.

¶2    We affirm. First, S.A.S. has identified no basis for a conclusion that his relinquishment was involuntary. Second, any failure to notify him of his statutory right to receive counseling did not invalidate the relinquishment. Finally, S.A.S. lacks standing to assert an equal protection challenge to the relinquishment requirements that apply to biological fathers.

I

¶3    B.B. was born out of wedlock in September 2016. Shortly after B.B.'s birth, the birth mother relinquished B.B. to K.H.B. and K.R.B., who filed a petition to adopt the child. S.A.S. initially objected to the adoption and filed an action seeking to establish his paternity and gain custody. He successfully established paternity and followed all statutory requirements for preserving his parental rights, including those found in Utah Code sections 78B-6-121 and 78B-6-122 (requiring birth fathers to, among other things, file an affidavit setting forth their commitment to provide for the child).

¶4    Later on, however, S.A.S. decided to consent to the adoption. On June 16, 2017, he texted K.H.B. about a letter sent by S.A.S.'s lawyer representing that he would sign a relinquishment of his parental rights if K.H.B. and K.R.B. would pay his attorney fees. S.A.S. said that he "regret[ted]" making that demand and told the prospective adoptive parents "to refuse to pay any money." He said he was sorry it had taken him so long to come to this "most difficult" of decisions but that he now "fe[lt] very good" about the adoption. He said he was going with the birth mother "either tomorrow or the beginning of the week" to "sign the papers," and emphasized that the "decision [to sign] was [his] and only [his]." S.A.S. explained that he had "discovered a lot about [his] family," including that "the condition that [his] family [wa]s in would not be the one hundred percent best place for [his] little girl." He said he had "had to take a step back [to] really find that out" but was "very glad" he had because he was "at peace with [his] decision."

¶5     The following day, S.A.S. signed his relinquishment before a notary public. The birth mother accompanied him. She testified that S.A.S. was "anxious" to sign and even "considered it urgent for him" to do so. Before signing, S.A.S. "read through the Consent thoroughly" and "knew that he was doing something special." The birth mother said it "was apparent to [her] that he signed it freely and voluntarily." The next day, S.A.S. sent another text message to K.H.B. saying that he felt "extremely good about [his] decision" and was "at peace with it."

¶6     S.A.S. later had yet another change of heart. On July 28, 2017, he filed a motion to revoke his voluntary relinquishment, asserting that it had been signed involuntarily—under "undue inducement, coercion, or fraud." In support of the motion, S.A.S. asserted that he had been influenced by K.H.B. and K.R.B.'s promise to provide him with the same level of contact with B.B. that they had agreed to give the birth mother. And he claimed that K.H.B. and K.R.B. had not kept this promise after he signed the relinquishment. Citing these facts, S.A.S. sought to have the motion to revoke his relinquishment heard at an upcoming evidentiary hearing.

¶7     S.A.S. also sought to have his relinquishment invalidated on due process grounds. He claimed his relinquishment should be invalidated because he had not been notified of his statutory right to counseling before signing it.[1] Relying on the fundamental nature of his parental rights, S.A.S. asserted that Utah Code section 78B-6-119(4)(c)'s provision of monetary damages as the sole remedy is unconstitutional because "it denies a birth parent the right to revoke a relinquishment or consent to adoption when the mandated due process right of counseling is not provided."

¶8     Finally, S.A.S. asserted that he had an equal protection right to the same relinquishment signing requirements binding the birth mother. Under Utah Code section 78B-6-124(4), a birth mother's relinquishment of parental rights may only be taken before a judge or her designee, who must certify that the relinquishment was signed "freely and voluntarily." By contrast, a biological father's relinquishment need only be signed before a notary public, without any certification of voluntariness by the notary public. *Id.*

---

[1] The parties dispute whether the adoptive parents in fact notified S.A.S. of his statutory right to counseling in connection with his relinquishment of parental rights.

§ 78B-6-124(3). S.A.S. claimed that there is no important governmental interest substantially advanced by this differing treatment based on gender, and asserted that the statute thus violates the Equal Protection Clause of the United States Constitution.

¶9 The district court rejected each of S.A.S.'s claims. First, it determined that an evidentiary hearing was unnecessary because S.A.S. had failed to allege sufficient facts to support his claim or merit a hearing. In the district court's view, S.A.S. had only "alleged his *conclusion* that his consent was not voluntarily given[] and that he was subject to undue inducement, coercion, or fraud." (Emphasis added.) And his bare assertion that his decision had been influenced by the prospective adoptive parents' (allegedly unkept) promise to provide him with the same level of contact that they had agreed to give the birth mother was insufficient. In fact, the district court found that the text messages in the record and affidavits submitted to the court "provide[d] substantial evidence that Birth Father considered 1) his claim to be the Birth Father, 2) the [adoptive parents'] desire to adopt the Child, 3) his contemplation of the best interests of the Child, and 4) his reasons for deciding to sign the Relinquishment after initially opposing it." The court thus determined that "[f]rom the evidence provided, the issue of Birth Father acting freely, knowingly and voluntarily is not disputed."

¶10 The district court then rejected S.A.S.'s argument that "the relinquishment [was] invalid because he was not notified of his right to paid, independent, unbiased, therapeutic counseling prior to making a decision to relinquish his parental rights" under Utah Code section 78B-6-119. The court concluded that any failure to give the required statutory notice "d[id] not invalidate [S.A.S.'s] relinquishment" or "form a basis to rescind it," because Utah Code section 78B-6-119(4)(c) expressly states that "[f]ailure by a person to give . . . notice" of the right to counseling "shall not constitute grounds for invalidating a[] relinquishment of parental rights; or consent to adoption."

¶11 The district court thus rejected S.A.S.'s due process claim, characterizing it as an assertion that "[m]onetary damages for violation of a requirement designed to protect fundamental constitutional rights are not [a] sufficient substitute for the loss of a child, and therefore Utah Code section 78B-6-119(4)(c) as written (and as applied in this case) is unconstitutional in denying guaranteed Fourteenth Amendment Due Process Rights." The court then determined that the question whether monetary damages is a

sufficient remedy for violation of a statute protecting due process rights is "a legislative determination requiring the balancing of competing public policies." It pointed to the fact that "[m]oney damages often are based on violation of fundamental due process claims" and concluded that S.A.S. had "fail[ed] to develop an argument why in this case, the legislature [cannot] establish monetary damages as the remedy for violation of Birth Father's due process rights."

¶12 Finally, the district court rejected S.A.S.'s equal protection claim. The court reasoned that "the differing requirements for consent outlined by Section 78B-6-124 are appropriate based upon the differing circumstances which mothers and fathers face." The court concluded that in light of these differences, "the legislature's determination that [the birth mother] be afforded additional safeguards was reasonable" and furthered the important governmental interest of "the best interests of children." So the court found no equal protection violation.

¶13 After making this ruling and allowing the birth mother to sign a new relinquishment, the district court entered the adoption decree on March 23, 2018. S.A.S. filed this appeal in the court of appeals, which certified the case to this court.

¶14 At oral argument in this case we raised the question of S.A.S.'s standing to assert his equal protection claim. And we issued a supplemental briefing order asking the parties to address various questions related to standing.

II

¶15 Three questions are presented for our review: (A) whether the district court erred in determining that S.A.S.'s relinquishment of his parental rights was voluntary; (B) whether the district court erred in concluding that the relinquishment was not invalidated by any due process right in connection with counseling about a relinquishment or consent to adoption; and (C) whether the district court erred in ruling that Utah Code section 78B-6-124's gender-based requirements do not run afoul of the Equal Protection Clause. We affirm the district court on the first two points and decline to reach the third question because we conclude S.A.S. lacks standing to assert an equal protection claim.

A

¶16 S.A.S. challenges the district court's determination that he voluntarily relinquished his parental rights under two sets of legal authorities: (1) a body of court of appeals cases establishing a right to

challenge the enforceability of a consent and relinquishment on the ground that it is involuntary;[2] and (2) statutory provisions identifying the important public policy of protecting the fundamental rights of biological parents [3] and requiring a determination that the relinquishment of parental rights and consent to adoption was "voluntary."[4] We accept the premises of S.A.S.'s arguments but find them insufficient to rebut the basis of the district court's holding.

¶17 The cited court of appeals cases are of course not binding on us. But we hereby endorse the proposition for which they stand. These cases explain that although the statute says that a consent and relinquishment is effective when signed and may not be revoked, there is nonetheless a right to show that the consent "was not entered into voluntarily but was induced through duress, undue influence, or under some misrepresentation or deception, or other grounds which would justify release from the obligations of any contract." *In re Adoption of Infant Anonymous*, 760 P.2d 916, 919 (Utah Ct. App. 1988).

¶18 We agree that this is a background principle of contract law against which the Utah Adoption Act[5] should be interpreted. In other words, we take no issue with the idea that a party could seek to undo the enforceability of a consent and relinquishment on grounds that would allow the party to avoid the enforceability of a contract.[6] *But neither did the district court.* S.A.S. asserts on appeal that he was deprived of an opportunity to prove that his relinquishment was involuntary. But he wasn't. The district court simply concluded that

---

[2] *See, e.g., In re Adoption of G.A.O.*, 2005 UT App 140; *In re Adoption of Infant Anonymous*, 760 P.2d 916 (Utah Ct. App. 1988).

[3] UTAH CODE §§ 78A-6-503, 78B-6-102 (highlighting the "fundamental right of a parent to rear the parent's child," the "public policy of this state that a parent retain the fundamental right and duty to exercise primary control over . . . the parent's child," and the fact that "compliance with the [relevant statutory] provisions" provides "absolute protection of an unmarried biological father's rights," etc.).

[4] *Id.* § 78B-6-112(5)(a).

[5] UTAH CODE § 78B-6-101 *et seq.*

[6] Presumably there would be a time limit for such a showing—perhaps it would need to take place before the entry of the adoption decree. But we do not pass on this question since it is not presented and its answer is unnecessary to the resolution of this case.

S.A.S. failed to allege any facts sufficient to sustain the vague assertion that his relinquishment was involuntary. And S.A.S. hasn't challenged *that* decision on appeal. In fact, the briefs don't speak to the district court's reason for rejecting S.A.S.'s voluntariness argument. This is fatal to S.A.S.'s appeal.[7] We thus see no basis for overruling the district court's conclusion that S.A.S.'s relinquishment of parental rights was in fact voluntary.

¶19  S.A.S.'s statutory authorities are similarly unavailing. Under Utah Code sections 78A-6-503 and 78B-6-102, it was admittedly incumbent on the district court to "consider, acknowledge, and dutifully protect" S.A.S.'s fundamental rights. But the Adoption Act also provides that a biological father's consent and relinquishment "is effective when it is signed and may not be revoked." UTAH CODE § 78B-6-126. Clearly the code contemplates that S.A.S.'s parental rights—fundamental and worthy of protection—may be waived. And the specific provision establishing the irrevocability of the waiver upon its execution controls over general provisions acknowledging the fundamental nature of the father's parental rights.[8]

¶20  As S.A.S. notes, Utah Code section 78B-6-112(5)(a) requires a showing that a relinquishment and consent was "truly 'voluntary.'" But this provision simply authorizes a court to terminate parental rights if a parent "executes a voluntary consent" or relinquishment "in

---

[7] *See ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2013 UT 24, ¶ 27, 309 P.3d 201 (declining to disturb a district court's evidentiary rulings because the appellant had "not explained why the district court excluded or admitted the evidence or why the[] rulings were in error" and had thus inadequately briefed the argument for reversing the rulings); *Utah Physicians for a Healthy Env't v. Exec. Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 3, 391 P.3d 148 (dismissing an appeal of an agency director's decision because the appellant's "failure to address the Executive Director's decision constitute[d] inadequate briefing"); *see also Johnson v. Johnson*, 2014 UT 21, ¶ 20, 330 P.3d 704 (explaining that this court "ha[s] repeatedly warned that [appellate courts] will not address arguments that are not adequately briefed"(second alteration in original) (citation omitted)).

[8] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails.").

accordance with . . . the requirements of this chapter." *Id.* The statute nowhere requires a separate hearing or proceeding on whether the consent was "truly voluntary." And in any event, the district court correctly found that S.A.S. had failed to make a credible factual allegation sufficient to necessitate an evidentiary hearing—it held that "the facts alleged by Birth Father [were] insufficient to constitute duress, undue influence or misrepresentation." So S.A.S. wasn't denied an opportunity to prove involuntariness. He just failed to do so.

B

¶21 S.A.S. next contends that the district court erred in determining that any failure to notify him of his statutory right to receive counseling did not invalidate his relinquishment of parental rights on due process grounds. He asks that we "rule that Utah Code 78B-6-119(4)(c) is unconstitutional" because "it denies a birth parent the right to revoke a relinquishment or consent to adoption when the mandated due process right of counseling is not provided."[9]

¶22 In support of this view, S.A.S. cites a dissenting opinion in *In re Adoption of J.S.* for the proposition that "a natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." 2014 UT 51, ¶ 122, 358 P.3d 1009 (Nehring, A.C.J., dissenting) (citation omitted). And he cites various cases that establish the

---

[9] In his briefing, S.A.S. asserts that "Utah Code 78B-6-119 violates Birth Father's Procedural/Substantive Due Process Facially and as Applied." In so doing, he effectively alludes to four distinct due process arguments. But his briefing ignores our established due process frameworks for each of these types of arguments and instead presents a single due process claim. So we can and do address only the argument that S.A.S. made. Any other arguments referred to, but not actually made, are rejected as inadequately briefed. *See* UTAH R. APP. P. 24(a)(8) (requiring a party to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal"); *see also Utah Physicians for a Healthy Env't v. Exec. Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 27, 391 P.3d 148 (explaining that if this court were to "supplement the [party's] inadequate brief with our own research and arguments, we would be abandoning our proper judicial function").

fundamental nature of parental rights.[10] Finally, he cites Utah Code section 78B-6-119, which grants parents the right to be "informed" of a "right to participate in" paid, independent counseling to assist in the difficult decision of whether to waive parental rights. "To be truly voluntary," S.A.S. contends, "a decision must be well informed." S.A.S. acknowledges that the same section of the code states that the "[f]ailure by a person to give [such] notice" "shall not constitute grounds for invalidating a relinquishment of parental rights or consent to adoption," but instead provides only a cause of action for damages. *See* UTAH CODE § 78B-6-119(4)(c). But he "asks this Court to rule in the spirit of Justice Nehring's dissent in *In re Adoption of J.S.*" and hold that "Utah Code 78B-6-119(4)(c) as written (and as applied in this case) is unconstitutional" because "damages for violation of a requirement designed to protect fundamental constitutional rights are not [a] sufficient substitute for the loss of a child."

¶23 In support of that view, S.A.S. essentially advances a policy argument. Because it "is in the public's interest to provide independent, unbiased, professional counseling to help . . . parent[s] make one of the most difficult, and life-altering decisions they will ever make," and because his parental rights are fundamental, S.A.S. asserts there must be a constitutional right to the remedy he seeks.[11] In his view there is "no reasonable or rational state public policy

---

[10] *See, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24 (1981); and *In re J.P.*, 648 P.2d 1364, 1376–77 (Utah 1982).

[11] In support of this view, S.A.S. also points to cases holding that an unwed father who "demonstrates a full commitment to the responsibilities of parenthood by com[ing] forward to participate in the rearing of his child . . . acquires substantial protection under the due process clause," *Lehr v. Robertson*, 463 U.S. 248, 261 (1983) (first alteration in original) (citation and internal quotation marks omitted), and holding that "decrees forever terminating parental rights" fall within the "category of cases in which" substantive and procedural due process issues arise. *M.L.B. v. S.L.J.*, 519 U.S. 102, 124 (1996). This is insufficient. S.A.S. merely asserts that he is in a position that *could* implicate due process — both by virtue of his status as an unwed father who has demonstrated commitment to parenthood and by being subject to a decree "forever terminating parental rights." And that does not tell us anything about why S.A.S.'s position *does in fact* implicate due process in the way that he imagines.

interest in refusing the right to revoke that decision if the birth parent is denied" the right to counseling. S.A.S. sees the right to sue the adoptive parents for money as a mere "booby prize." And he asks us to declare Utah Code section 78B-6-119(4)(c) unconstitutional on that basis.

¶24 This falls far short. Parental rights are admittedly "more precious than any property right" in many respects. *In re Adoption of J.S.*, 2014 UT 51, ¶ 122 (Nehring, A.C.J., dissenting) (citation omitted). They are also indisputably fundamental. *See supra* ¶ 16 n.3. But that doesn't tell us that the Due Process Clause guarantees the remedy that S.A.S. prefers—or that we might endorse if we were exercising our common-law power. The constitution is "not a license for common-law policymaking." *State v. Lujan*, 2020 UT 5, ¶ 5, 459 P.3d 992. It is a written document that enshrines only the rights and protections established by the people who ratified it—interpreted "in accordance with the public understanding" of the written text when it was voted on. *Id.*

¶25 It is thus not enough for S.A.S. to assert that parental rights are fundamental, or that their importance is not outweighed by sufficient policy interests on the other side of the scale. This is not our mode of constitutional interpretation. Under our case law, S.A.S. bears the burden of showing that the specific right and remedy he asserts is guaranteed by the original public meaning of the Due Process Clause. "[T]he Due Process Clause is not a free-wheeling constitutional license" for this court to "assure fairness on a case-by-case basis." *In re Steffensen*, 2016 UT 18, ¶ 7, 373 P.3d 186. It is a guarantee of rights "measured by reference to traditional notions of fair play and substantial justice." *Lujan*, 2020 UT 5, ¶ 26 (citation omitted).

¶26 S.A.S. has ignored this settled mode of constitutional interpretation. He has made no attempt to establish an originalist basis for his proposed due process right and remedy. And his appeal fails on that basis.

C

¶27 S.A.S.'s final contention on appeal is his challenge to the dismissal of his equal protection claim. This claim is aimed at the Adoption Act's differential treatment of fathers and mothers in the procedure for execution of a relinquishment and consent to adoption. Under Utah Code section 78B-6-124(4), a birth mother's relinquishment must be signed in front of a judge or court-appointed representative who must certify in writing that the birth mother "read

and understands" the relinquishment and "signed it freely and voluntarily." Yet a biological father is not subject to this requirement. A biological father's relinquishment need only be signed in front of a notary—without any written, third-party certification of voluntariness. *See id.* § 78B-6-124(3).

¶28 S.A.S. challenges these provisions on equal protection grounds. He asserts that the statutory framework effects differential treatment on the basis of sex, triggering intermediate scrutiny. And he asks us to strike down such treatment—to impose on biological fathers the same standards imposed on birth mothers—on the ground that there is no important governmental interest that is substantially advanced by these provisions.[12]

¶29 We decline to reach the merits of this claim because we conclude that S.A.S. lacks standing to assert it. Our law of standing in Utah is an outgrowth of the doctrine of "separation of powers." *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 30, 424 P.3d 95. The requirement of standing is jurisdictional in the sense that it defines the limits of the judicial power in our "tripartite" system of government. *Id.* (quoting *Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983)). It should thus be "raised *sua sponte* by the court" in the face of any doubt on the matter. *Id.* ¶ 2. We explored some doubts about S.A.S.'s standing at oral argument and subsequently asked the parties to submit supplemental briefing addressing this issue.

¶30 The traditional test for standing requires proof that (1) the claimant has suffered a "distinct and palpable injury" that is (2) causally connected to the challenged actions and is (3) "substantially likely" to be redressed by the requested judgment. *Id.* ¶ 34 (citation omitted). Our supplemental briefing order asked the parties to address these elements as applied to this case. We asked the

---

[12] S.A.S. also seeks to advance a second equal protection claim on this appeal—a challenge to the district court's decision to afford the birth mother a second opportunity to attest to the voluntariness of her consent. *See supra* ¶ 13. S.A.S. notes that the district court finalized the adoption decree only after "appointing an official to again query (and certify) Birth Mother's knowledge, understanding and voluntariness" of her relinquishment. And he asserts that he should have been afforded the same opportunity as a matter of equal protection. But this claim was not preserved in the district court. We decline to reach it on that basis.

parties to evaluate whether S.A.S.'s standing to assert an equal protection claim depends on a showing of a "causal connection between the differential treatment in Utah Code section 78B-6-124 and the forfeiture of parental rights"—proof that he would not have relinquished his parental rights if he had been subject to the same statutory requirements imposed on mothers—or whether it would be enough for him to show that he "was subjected to differential treatment." In addition, we asked the parties to indicate whether S.A.S. could show a causal connection between the differential treatment and his relinquishment of parental rights on the current record, or whether further factual development was necessary.

¶31 S.A.S.'s supplemental brief asserts that he has standing based on the mere fact of differential treatment—that no causal connection to the forfeiture of his parental rights is required. Alternatively, if proof of a causal connection between his differential treatment under the Adoption Act and his loss of parental rights is necessary, S.A.S. contends that he has established it through the affidavit he submitted in the district court. That affidavit, in his view, is enough "to raise the causal connection . . . and [the] probability that he would not have executed a consent or relinquishment if he had been subject to the statutory requirements imposed on birth mothers." It does so, S.A.S. contends, by showing that he relinquished his parental rights "under extreme duress and undue influence, as well as fraud, misrepresentation and deceit." S.A.S. stands on this factual record. He makes no request for further factual development.

¶32 These arguments fall short. S.A.S. has alleged a cognizable injury in the loss of his parental rights. But he has not established a causal connection to the challenged action—the differential treatment of biological fathers and mothers under the Adoption Act—or shown that the judgment he seeks would redress his injury. And that is fatal to his standing.

¶33 The elements of standing in our courts are a matter of state law. But S.A.S.'s underlying claim is federal, so federal law informs the question whether S.A.S. has identified a cognizable injury that is causally connected to the action challenged under the Equal Protection Clause and redressable by a judgment in his favor. Two United States Supreme Court cases are controlling: *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656 (1993), and *Texas v. Lesage*, 528 U.S. 18 (1999).

¶34 These cases set forth the basis for a plaintiff to establish a cognizable injury that is causally connected to a discriminatory

governmental program under the Equal Protection Clause. They hold that the existence of a cognizable injury with a causal connection to a challenged program depends on the nature of the alleged discrimination and the form of relief sought by the plaintiff. Under *General Contractors*, a plaintiff who seeks forward-looking relief by challenging a governmental barrier that makes it "more difficult for members of one group to obtain a benefit" than for another can establish a cognizable injury by showing that the plaintiff is "able and ready" to seek the relevant benefit but that "a discriminatory policy prevents it from doing so on an equal basis." 508 U.S. at 666. In other words, such a plaintiff need not show that he "would have obtained" the benefit he was seeking in the absence of the discriminatory policy—the ongoing interference with the right to seek the benefit on an equal basis itself constitutes a cognizable injury causally connected to the policy. *Id.* The plaintiffs in *General Contractors* were contractors looking to submit bids under an allegedly discriminatory governmental program. *Id.* at 659. They had standing because their injury (inability to bid on equal footing with others) was caused by the ongoing existence of the allegedly discriminatory program and could be redressed by the judgment they were seeking—a decision to strike down the discriminatory elements of the program going forward. *See id.*

¶35 Under *Lesage*, a plaintiff who seeks only backward-looking relief under a challenge to a "discrete governmental decision" must show that the government would not "have made the same decision regardless" of the discriminatory action. 528 U.S. at 21. In other words, such a plaintiff must show that he would have obtained the benefit he sought in the absence of the discriminatory action. The plaintiff in *Lesage* was an applicant seeking admission to a state university with a race-conscious admissions program. *Id.* at 19. He was in a different position from the contractor-plaintiffs in *General Contractors* who sought only forward-looking relief in a judgment striking down a program that they were "able and ready" to participate in. The *Lesage* plaintiff primarily sought backward-looking relief for an alleged injury he suffered as a result of the application of discriminatory admissions criteria to his past application.[13] *Id.* The court held that for

---

[13] The plaintiff in *Lesage* also asserted a claim for injunctive relief in the district court, alleging that the state university continued to maintain a discriminatory admissions program. *Texas v. Lesage*, 528

(continued . . .)

this retrospective claim, he could not establish a "cognizable injury" where the defendant established that the plaintiff would not have been admitted even under race-neutral criteria. *Id.*

¶36 S.A.S. lacks standing under these cases. He is not seeking forward-looking relief under an ongoing discriminatory program. Unlike the bidding contractors in *General Contractors*, S.A.S. is not "able and ready" to participate in the ongoing operation of a program but inhibited in so doing by a discriminatory practice. Conceivably, if S.A.S. had other children in whom he was "able and ready" to relinquish his parental rights, he could seek "forward-looking" relief and challenge his "ongoing" differential treatment under *General Contractors*. But that is not this case.

¶37 S.A.S. is like the plaintiff in *Lesage*. He is challenging a "discrete governmental decision"—the acceptance of the relinquishment of his parental rights—"as having been based on an impermissible criterion." *Id.* at 21. In other words, his challenge concerns the effect of differential treatment on a single, retrospective event—with no threat of a continuing or imminent constitutional violation. S.A.S. thus has no stake going forward in the terms and conditions of the statutes concerning relinquishment. For this reason, S.A.S. must show that absent section 78B-6-124's differential treatment, he would not have relinquished his parental rights.

¶38 S.A.S. has failed to make that showing. He asserts that his affidavit establishes the requisite "causal connection" by showing that he relinquished his parental rights under duress and undue influence. That assertion fails for reasons explained above. *Supra* ¶ 18. But it is also nonresponsive to the standing questions raised in our supplemental briefing order. S.A.S. nowhere explains how a showing of involuntariness could establish that the loss of his parental rights was caused by the alleged equal protection violation rather than by the alleged duress, or how his loss is redressable by the judgment he requests.

¶39 Nor does S.A.S. indicate a need for further factual development to make those connections. We opened the door to that possibility in our supplemental briefing order. But S.A.S. chose to rest

_____

U.S. 18, 21 (1999). But it was unclear whether that claim was preserved on appeal, and the Supreme Court did not address it.

on the facts in the record—asserting vaguely that his "[a]ffidavit is enough to raise the causal connection."

¶40 We disagree. The affidavit comes nowhere close to establishing that the differential treatment of fathers and mothers caused his injury (that he would not have relinquished his parental rights if he had been subjected to the requirements imposed on birth mothers) or that a judgment in his favor would redress his injury (that a decision to strike down the statute by imposing the same requirements on mothers and fathers would be a remedy for his lost rights). We dismiss the equal protection claim for lack of standing on this basis.

### III

¶41 The district court correctly concluded that S.A.S's relinquishment of parental rights was voluntary. And the Due Process Clause does not invalidate a relinquishment that a biological parent signs without being notified of his statutory right to counseling in connection with the decision. We do not address the merits of S.A.S.'s equal protection claim. Instead, we dismiss it for lack of standing.

———————